**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SOCIETE DES BAINS DE MER ET DU
CERCLE DES ETRANGERS A MONACO,

ECF Case

            Plaintiff,

Case No. 08-CV-03157

     vs.

MGM MIRAGE and VICTORIA PARTNERS,
L.P.,

            Defendants.

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS, OR, IN THE ALTERNATIVE,
TO TRANSFER THIS CASE TO THE DISTRICT OF NEVADA**

Jonathan E. Moskin (JM-9814)
E. Michelle Dean (ED-0104)
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 819-8200

Michael J. McCue (*pro hac vice* pending)
Jonathan W. Fountain (*pro hac vice* pending)
LEWIS AND ROCA LLP
3993 Howard Hughes Pkwy., Suite 600
Las Vegas, NV 89169
(702) 949-8200

# TABLE OF CONTENTS

**Page**

STATEMENT OF FACTS ................................................................................................ 2

LEGAL STANDARDS ................................................................................................. 3

ARGUMENT ................................................................................................................ 4

I.  SBM HAS FAILED TO ALLEGE A *PRIMA FACIE* CASE FOR EXERCISING PERSONAL JURISDICTION OVER THE DEFENDANTS. ................................... 4

    A.  Neither MGM MIRAGE nor Victoria Partners are Subject to Personal Jurisdiction Under New York's Long Arm Statute. ........................................... 4

        1.  The Defendants Are Not Subject to Specific Personal Jurisdiction Under CPLR § 302(a)(1). ............................................................................ 5

        2.  The Defendants Are Not Subject to Specific Personal Jurisdiction Under CPLR § 302(a)(2). ............................................................................ 6

        3.  The Defendants Are Not Subject to Specific Personal Jurisdiction Under CPLR § 302(a)(3). ............................................................................ 6

        4.  The Defendants Are Not Subject to Specific Personal Jurisdiction Under CPLR § 302(a)(4). .......................................................................... 11

        5.  Conclusion Regarding New York's Long Arm Statute. ........................... 11

    B.  The Exercise of Personal Jurisdiction Does Not Comport with Due Process. .. 11

        1.  The Defendants Lack Minimum Contacts With New York. .................... 11

        2.  The Court Need Not Consider Whether the Exercise of Personal Jurisdiction Would Be Reasonable. ........................................................ 13

II.  THE COURT SHOULD DISMISS THIS ACTION FOR IMPROPER VENUE. ...... 14

III.  THE COURT SHOULD DISMISS THIS ACTION WITH PREJUDICE BECAUSE IT IS BARRED BY THE DOCTRINE OF LACHES. ........................... 15

IV.  SBM HAS FAILED TO STATE ANY CLAIM AGAINST MGM MIRAGE UPON WHICH RELIEF MAY BE GRANTED ...................................................... 18

V.  IF THE COURT DOES NOT DISMISS THIS ACTION, IT SHOULD TRANSFER IT TO THE DISTRICT OF NEVADA. ................................................ 20

    A.  Convenience of the Witnesses ...................................................................... 22

    B.  Availability of Process .................................................................................. 23

    C.  Convenience of the Parties ............................................................................ 24

    D.  The Locus of Operative Facts ....................................................................... 25

    E.  The Location of Relevant Documents and the Relative Ease of Access to Sources of Proof ........................................................................................... 25

# TABLE OF CONTENTS
## (Continued)

**Page**

F.    The Parties' Relative Means ............................................................. 26

G.    The Forum's Familiarity with the Governing Law ............................................ 27

H.    The Weight Accorded to the Plaintiff's Chosen Forum. ................................. 27

I.    Trial Efficiency and the Interests of Justice ...................................... 27

CONCLUSION ................................................................................................................. 28

# TABLE OF AUTHORITIES

## CASES

5-Star Mgmt., Inc. v. Rogers,
  940 F. Supp. 512 (E.D.N.Y. 1996) ...............................................................5

800-Flowers, Inc. v. Intercontinental Florist,  Inc.,
  860 F. Supp. 128 (S.D.N.Y. 1994)........................................................25, 26

Anadigics, Inc. v. Raytheon Co.,
  903 F. Supp. 615 (S.D.N.Y. 1995)........................................................23, 28

Appalachian Enters. v. ePayment Solutions Ltd.,
  No. 01 CV 11502, 2004 U.S. Dist. LEXIS 24657 (S.D.N.Y. Dec. 7, 2004)...............19

Arrow Elecs., Inc. v. Ducommun Inc.,
  724 F. Supp. 264 (S.D.N.Y. 1997)..............................................................23

Avon Prods., Inc. v. S.C. Johnson & Son, Inc.,
  984 F. Supp. 768 (S.D.N.Y. 1997)..............................................................16

Ball v. Metallurgie Hoboken-Overpelt, S.A.,
  902 F.2d 194 (2d Cir. 1990).........................................................................9

Bassili v. Chu,
  242 F. Supp. 2d 223 (W.D.N.Y. 2002) .......................................................28

Bensusan Restaurant Corp. v. King,
  126 F.3d 25 (2d Cir. 1997).............................................................................7

Bensusan Restaurant Corp. v. King,
  937 F. Supp. 295 (S.D.N.Y. 1996).................................................................4

Billing v. Commerce One Inc.,
  186 F. Supp. 2d 375 (S.D.N.Y. 2002).........................................................25

Bordiga v. Directors Guild of America,
  159 F.R.D. 457 (S.D.N.Y. 1995) ................................................................28

Breindel v. Levitt & Sons,
  294 F. Supp. 42 (D.C.N.Y. 1968) .........................................................26, 27

Burger King Corp. v. Rudzewicz,
  471 U.S. 462 (1985)...................................................................................14

Buti v. Perosa, S.R.L.,
    139 F.3d 98 (2d Cir. 1998)........................................................................10

CNN, L.P. v. GoSMS.com, Inc.,
    No. 00 Civ. 4812, 2000 U.S.Dist. LEXIS 16156 (S.D.N.Y. Nov. 6, 2000) .................4

Carlson v. Cuevas,
    932 F. Supp. 76 (S.D.N.Y. 1996)................................................................7

Carte Blanche Singapore Pte., Ltd. v. Diners Club Int'l, Inc.,
    2 F.3d 24 (2d Cir. 1993)..........................................................................20

Citadel Management, Inc. v. Telesis Trust, Inc.,
    123 F. Supp. 2d 133 (S.D.N.Y 2000)..........................................................19

Dale v. Banque SCS Alliance S.A.,
    No. 02 Civ. 3592 (RCC) (KNF), 2005 U.S. Dist. LEXIS 20967 (S.D.N.Y.
    Sept. 22, 2005) ....................................................................................4

Darby v. Societe Des Hotels Meridiens,
    No. 88 Civ. 7604 (RWS), 1999 U.S. Dist. LEXIS 9744 (S.D.N.Y. Jun. 25,
    1999) ..............................................................................................20

Factors Etc. Inc. v. Pro Arts Inc.,
    579 F.2d 215 (2d Cir. 1978)......................................................................23

Flowserve Corp. v. BMCE, Inc.,
    No. 05 Civ. 8075 (WHP), 2006 U.S. Dist. LEXIS 73942 (S.D.N.Y. Oct. 12,
    2006) ..............................................................................................27

Fort Knox Music Inc. v. Baptiste,
    203 F.3d 193 (2d Cir. 2000)....................................................................5, 6

Gulf Oil Corp. v. Gilbert,
    330 U.S. 501 (1947)..............................................................................26

Hanson v. Denckla,
    357 U.S. 235 (1956)..............................................................................12

Harley-Davidson, Inc. v. Estate of O'Connell,
    13 F. Supp. 2d 271 (N.D.N.Y 1998)........................................................16, 17

Harris v. N.Y. State Department of Health,
    202 F. Supp. 2d 143 (S.D.N.Y. 2002)..........................................................17

ITC Ltd. v. Punchgini, Inc.,
    482 F.3d 135 (2d Cir. 2007)..................................................................................10

Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.,
    419 F. Supp. 2d 395 (S.D.N.Y. 2005)....................................................................23

Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Etrangers a
    Monaco, 329 F.3d 359 (4th Cir. 2003) ..................................................................21

Int'l Shoe Co. v. Washington,
    326 U.S. 310 (1945)........................................................................................12, 14

Ivoclar Vivadent, Inc. v. Ultident, Inc.,
    No. 04-CV-0984E(Sc), 2005 U.S. Dist. LEXIS 20382 (W.D.N.Y. Jun. 15,
    2005) .........................................................................................................................7

Keramchemie GmbH v. Keramchemie (Canada), Ltd.,
    771 F. Supp. 618 (S.D.N.Y. 1991)..........................................................................8

Kernan v. Kurz-Hastings, Inc.,
    175 F.3d 236 (2d Cir. 1999)...............................................................................9, 10

Kittay v. Kornstein,
    230 F.3d 531 (2d Cir. 2000)...................................................................................19

Kolko v. Holiday Inns,
    672 F. Supp. 713 (S.D.N.Y. 1987).........................................................................25

Kramer v. Time Warner Inc.,
    937 F.2d 767 (2d Cir. 1991)...................................................................................17

La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.,
    495 F.2d 1265 (2d Cir. 1974)..................................................................................11

Le Blume Import Co. v. Coty,
    293 F. 344 (2d Cir. 1923) .......................................................................................11

Lennon v. Seaman,
    63 F. Supp. 2d 428 (S.D.N.Y. 1999).......................................................................16

Malone & Hyde, Inc. v. Tandy, Corp.,
    476 U.S. 1158 (1986)...............................................................................................16

Mantello v. Hall,
    947 F. Supp. 92 (S.D.N.Y. 1996).............................................................................4

Marine Midland Bank, N.A. v. Miller,
    664 F.2d 899 (2d Cir. 1981)..........................................................................4

Millennium v. Hyland Software, Inc.,
    No. 03 Civ. 3900, 2003 U.S. Dist. LEXIS 22239 (S.D.N.Y. Dec. 10, 2003)..............23

Mother's Restaurants Inc. v. Mother's Other Kitchen, Inc.,
    218 U.S.P.Q. 1046, 1048 (T.T.A.B. 1983) ..................................................10

Person's Co. v. Christman,
    900 F.2d 1565 (1990)...............................................................................10

Prudential Sec. Inc. v. Norcom Dev. Inc.,
    No. 97 Civ. 6308 (DC), 1998 U.S. Dist. LEXIS 10569 (S.D.N.Y. Jul. 15,
    1998) ......................................................................................................27

Santos v. Hecht,
    No 06-CV-783 (JFB) (MLO), 2006 U.S. Dist. LEXIS 52423 (E.D.N.Y. Jul.
    31, 2006) ................................................................................................17

Saratoga Vichy Spring Co., Inc. v. Lehman,
    625 F.2d 1037 (2d Cir. 1980)....................................................................16

Schneider v. Sears,
    265 F. Supp. 257 (S.D.N.Y. 1967)............................................................28

Schwartz v. R.H. Macy's, Inc.,
    791 F. Supp. 94 (S.D.N.Y. 1992)..............................................................22

Smith v. Metro North Commuter R.R.,
    No. 98 Civ. 2528 (RWS), 2000 U.S. Dist. LEXIS 14168 (S.D.N.Y. Sept. 29,
    2000) ......................................................................................................19

Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,
    450 F.3d 100 (2d Cir. 2006).......................................................................6

Solow Bldg. Co., LLC v. Nine West Group, Inc.,
    No. 00 Civ. 7685 (DC), 2001 U.S.Dist. LEXIS 8848 (S.D.N.Y. Jun 28, 2001) ............
    ……………………………………………………………….................15,16, 18

Spencer, White & Prentis, Inc. v. Jacet Construction Corp.,
    258 F. Supp. 473 (D.C.N.Y 1966) ............................................................27

Stewart v. Vista Point Verlag,
    No. 99 Civ. 4225, 2000 U.S. Dist. LEXIS 14236 (S.D.N.Y. Sept. 29, 2000).....………4

Sunward Elecs., Inc. v. McDonald,
    362 F.3d 17 (2004)........................................................................................5

Tandy Corp. v. Malone & Hyde, Inc.,
    769 F.2d 362 (1985)......................................................................................16

Tandy Corp. v. Malone & Hyde, Inc.,
    777 F.2d 1130 (1985)....................................................................................16

Tap Publ'ns., Inc. v. Chinese Yellow Pages (New York), Inc.,
    925 F. Supp. 212 (S.D.N.Y. 1996))..............................................................16

Thane Int'l, Inc. v. Trek Bicycle Corp.,
    No. CV 99-01470 DT (SHx), 1999 U.S. Dist. LEXIS 22031 (C.D. Cal. Dec.
    20, 1999) ......................................................................................................17

Thane Int'l v. Trek Bicycle Corp.,
    305 F.3d 894 (9th Cir. 2002) .......................................................................17

United States v. Coriarty,
    No. 99 Cr. 1251, 2000 U.S. Dist. LEXIS 11040 (S.D.N.Y. Aug. 7, 2000) .................26

United States v. Bestfoods,
    524 U.S. 51 (1998).......................................................................................20

Whitaker v. Am. Telecasting, Inc.,
    261 F.3d 196 (2001).......................................................................................4

United States v. Martino,
    No. 00 Cr. 389, 2000 U.S. Dist. LEXIS 17945 (S.D.N.Y. Dec. 14, 2000)..................26

World-Wide Volkswagen Corp. v. Woodson,
    444 U.S. 286 (1980)................................................................................12, 14

## FEDERAL STATUTES AND RULES

28 U.S.C. § 1367(a) .........................................................................................27

28 U.S.C. § 1391 .............................................................................................22

28 U.S.C. § 1391(a) .........................................................................................22

28 U.S.C. § 1391(b) ....................................................................................15, 22

28 U.S.C. § 1391(c) ..................................................................................................15

28 U.S.C. § 1404(a) ...........................................................................................3, 21, 22

28 U.S.C. § 1406(a) ...........................................................................................14, 15

Fed. R. Civ. P. 45 12(b)(2)...............................................................................2, 4

Fed. R. Civ. P. 45 12(b)(3)................................................................................2

Fed. R. Civ. P. 45 12(b)(6)................................................................................2, 15, 19

Fed. R. Civ. P. 45 (c)(3)(A)(ii) .........................................................................24

Fed. R. Evid. 201(d) ..........................................................................................17

Lanham Act, 15 U.S.C. §§ 1114, 1125 .............................................................5

N.Y. CPLR § 301 ...............................................................................................5

N.Y. CPLR § 302 ...............................................................................................5

N.Y. CPLR § 302(a)(1)......................................................................................5, 6

N.Y. CPLR § 302(a)(2)......................................................................................6, 7

N.Y. CPLR § 302(a)(3)......................................................................................7, 8

N.Y. CPLR § 302(a)(3)(i)..................................................................................8, 9

N.Y. CPLR § 302(a)(3)(ii).................................................................................9, 10

N.Y. CPLR § 302(a)(4)......................................................................................11, 12

Defendant Victoria Partners opened the Monte Carlo Resort & Casino, a luxurious 3,000 room resort on the famous Las Vegas Strip, on June 21, 1996. Now, almost twelve (12) years later, Plaintiff, Société des Bains de Mer et du Cercle des Etrangers à Monaco ("SBM") has filed this action claiming that Victoria Partners' use of the MONTE CARLO mark violates SBM's alleged U.S. trademark rights.

Pursuant to Rule 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure, Victoria Partners and its parent MGM MIRAGE (collectively, the "Defendants") move to dismiss this action for lack of personal jurisdiction and improper venue. Neither of the Defendants have sufficient contacts with the State of New York for the Court to exercise personal jurisdiction over them. In addition, venue is improper because the Defendants do not reside in the State of New York and a substantial part of the events or omissions giving rise to SBM's claims did not occur in the State of New York.

The Defendants also move to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, because the Amended Complaint ("Am. Compl.") fails to state a claim upon which relief can be granted. The Amended Complaint establishes, on its face, that SBM's claims are barred by the doctrine of laches, based on SBM's lengthy delay in asserting its claims. Indeed, SBM fails to allege any facts that would excuse its nearly twelve (12) year delay in filing suit against Victoria Partners. Further, MGM MIRAGE moves separately to dismiss this action because the Amended Complaint fails to state a claim against MGM MIRAGE upon which relief can be granted. The sole basis that SBM alleges for MGM MIRAGE's purported liability is MGM MIRAGE's ownership of Victoria Partners, which is insufficient to establish MGM MIRAGE's liability.

If the Court concludes that personal jurisdiction exists and does not otherwise dismiss this action, the Defendants move to transfer this case to the District of Nevada pursuant to 28 U.S.C. § 1404(a).

This motion is supported by the points and authorities set forth below as well as the declarations of Bryan L. Wright ("Wright Decl.") and Jonathan W. Fountain ("Fountain Decl."), and the exhibits attached thereto.

## STATEMENT OF FACTS

SBM is a foreign business entity organized under the laws of Monaco with its principal place of business in Monaco. (Am. Compl. ¶ 5.) SBM allegedly owns and operates five casinos, four hotels, and numerous spas, restaurants, and entertainment venues in Monaco. (*Id.* ¶ 14.) SBM also claims that it has an office in New York City. (*Id.* ¶ 5.) SBM does not claim to be the owner or operator of any casino, hotel, spa, restaurant, entertainment venue or other business located in New York State or anywhere else in the United States. (*See generally* Am. Compl.)

MGM MIRAGE is a Delaware corporation with its principal place of business in Las Vegas, Nevada. (*Id.* ¶ 6.) Victoria Partners is an indirectly owned subsidiary of MGM MIRAGE. (*See* Wright Decl. ¶ 4.) Since June 21, 1996, Victoria Partners has operated the Monte Carlo Resort & Casino located on the Las Vegas Strip. (*Id.* ¶ 5.) The Defendants: (1) are not residents of New York; (2) do not have an office or other place of business in New York; (3) do not maintain any corporate records or documents in New York; (4) do not transact business in New York; (5) do not have any directors, officers, or employees who work or reside in New York; (6) do not have a designated agent for service of process in New York; (7) are not qualified, licensed, or otherwise authorized to conduct business in New York; (8) do not ship goods into or render services in New York; (9) do not own any bank accounts, property, or other

assets in New York; (10) do not hold board meetings in New York; and (11) do not pay taxes to the State of New York.  (*See* Wright Decl. ¶ 6.)

## LEGAL STANDARDS

On a motion to dismiss for lack of personal jurisdiction filed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendants.  *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  In deciding whether it has personal jurisdiction over the defendants, the court may rely solely upon the motion papers, allow discovery, or conduct an evidentiary hearing.  *See Dale v. Banque SCS Alliance S.A.*, No. 02 Civ. 3592 (RCC) (KNF), 2005 U.S. Dist. LEXIS 20967, at *9-10 (S.D.N.Y. Sept. 22, 2005) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).  The court may consider matters outside the pleadings without converting the motion into a motion for summary judgment.  *See Bensusan Rest. Corp. v. King*, 937 F. Supp. 295, 298 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997).  If the court chooses to rely on the pleadings and affidavits alone, the plaintiff must make a *prima facie* showing of jurisdiction.  *See Dale*, 2005 U.S. Dist. LEXIS 20967, at *10 (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)).  However, the action is subject to dismissal if the plaintiff's allegations are neither "factually based [nor] intuitively apparent" or if the defendant "affirmatively disproves" the allegations.  *See CNN, L.P. v. GoSMS.com, Inc.*, No. 00 Civ. 4812, 2000 U.S. Dist. LEXIS 16156, at *7 (S.D.N.Y. Nov. 6, 2000) (citing *Stewart v. Vista Point Verlag*, No. 99 Civ. 4225, 2000 U.S. Dist. LEXIS 14236, at *9-10 (S.D.N.Y. Sept. 29, 2000); *Mantello v. Hall*, 947 F. Supp. 92, 102 (S.D.N.Y. 1996)).

## ARGUMENT

**I.     SBM HAS FAILED TO ALLEGE A *PRIMA FACIE* CASE FOR EXERCISING PERSONAL JURISDICTION OVER THE DEFENDANTS.**

The Court should dismiss this action because the Defendants are not subject to specific personal jurisdiction under New York's long arm statute and because the exercise of personal jurisdiction over the Defendants does not comport with the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

When a case involves a federal question and out-of-state defendants, federal courts apply the personal jurisdiction law of the forum state "if the applicable federal statute does not provide for national service of process."  *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004).  SBM has asserted claims for federal unfair competition, trademark infringement, and trademark dilution under the Lanham Act, 15 U.S.C. §§ 1114, 1125, and related state and common law claims against the Defendants, both of whom are out-of-state defendants.  The Lanham Act does not provide for national service of process.  *See id.*; *Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000).  Thus, New York's long arm statute applies in this case.  In addition to satisfying New York's long arm statute, the exercise of personal jurisdiction must comport with the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution.  *See 5-Star Mgmt., Inc. v. Rogers*, 940 F. Supp. 512, 516 (E.D.N.Y. 1996).

### A.     Neither MGM MIRAGE nor Victoria Partners are Subject to Personal Jurisdiction Under New York's Long Arm Statute.

Under New York's long arm statute, a court may exercise either "general" personal jurisdiction pursuant to N.Y. CPLR § 301 or "specific" personal jurisdiction pursuant to N.Y.

CPLR § 302.  SBM has alleged only specific personal jurisdiction pursuant to N.Y. CPLR § 302. (*See* Am. Compl. ¶ 10.)

### 1. The Defendants Are Not Subject to Specific Personal Jurisdiction Under CPLR § 302(a)(1).

Section 302(a)(1) allows the court to exercise personal jurisdiction over a non-domiciliary who, "transacts any business within the state or contracts anywhere to supply goods or services in the state."  N.Y. C.P.L.R. 302(a)(1).  To establish specific personal jurisdiction under Section 302(a)(1), "two requirements must be met: (1) the defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity."  *See Sole Resort, S.A. de C.V. v. Allure Resorts, LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citation omitted).  The statute allows specific personal jurisdiction "only over a defendant who has 'purposefully availed himself of the privilege of conducting activities within New York and thereby invok[ed] the benefits and protections of its laws.'"  *Fort Knox Music Inc.*, 203 F.3d at 196 (quotation and citation omitted).

SBM alleges that the Court has personal jurisdiction over the Defendants because, among other things, they are "transacting business and/or contracting to supply goods or services in the State of New York." (Am. Compl. ¶ 10.)  However, SBM has failed to identify any business that MGM MIRAGE or Victoria Partners are transacting or have transacted in the New York.  Moreover, SBM has failed to identify any goods or services that MGM MIRAGE or Victoria Partners have allegedly contracted to supply in New York.  Furthermore, SBM has not alleged that its claims arise out of any transaction of business by MGM MIRAGE or Victoria Partners in New York.

Accordingly, SBM has failed to make a *prima facie* showing of specific personal jurisdiction pursuant to Section 302(a)(1).

##### 2.   The Defendants Are Not Subject to Specific
#####       Personal Jurisdiction Under CPLR § 302(a)(2).

Section 302(a)(2) provides for specific personal jurisdiction over a non-domiciliary defendant if that party or its agent committed a tortious act within the State of New York.  To be subject to specific personal jurisdiction under § 302(a)(2), the defendant must have committed the tort while *physically present* in New York.  *See Bensusan Rest.  Corp.*, 126 F.3d at 28-29; *Carlson v. Cuevas*, 932 F. Supp. 76, 80 (S.D.N.Y. 1996).

SBM does not allege that either MGM MIRAGE or Victoria Partners has committed any tortious act while *physically present* in New York State.  In fact, neither Victoria Partners nor MGM MIRAGE have, have had, or maintain a physical presence in New York.  (*See* Wright Decl. ¶ 6.)  Moreover, MGM MIRAGE itself does not offer any goods and does not render any services under the MONTE CARLO mark anywhere, and Victoria Partners only offers goods and services under the MONTE CARLO mark in Las Vegas, Nevada.  (*See* Wright Decl. ¶¶ 7-8.)  Thus, even assuming (solely for purposes of argument) that infringement occurred, it occurred in Nevada, not in New York.

Accordingly, SBM has failed to make a *prima facie* showing of specific personal jurisdiction pursuant to Section 302(a)(2).

##### 3.   The Defendants Are Not Subject to Specific
#####       Personal Jurisdiction Under CPLR § 302(a)(3).

Section 302(a)(3)(i) provides for specific personal jurisdiction over a non-domiciliary defendant who "commits a tortious act without the state causing injury to person or property *within the state* . . . ."  N.Y. C.P.L.R. 302(a)(3).  (Emphasis added.)  "For purposes of determining jurisdiction under CPLR § 302(a)(3), the alleged injury stemming from infringement on a trademark 'in the form of damage to goodwill, lost sales, or lost customers' occurs where

the trademark owner *resides and conducts business* because this is where the 'first effects' of trademark infringement or dilution are typically felt." *Ivoclar Vivadent, Inc. v. Ultident, Inc.*, No. 04-CV-0984E(Sc), 2005 U.S. Dist. LEXIS 20382, at *12-13 (W.D.N.Y. June 15, 2005) (italics added) (citing *Savage Universal Corp. v. Grazier Constr., Inc.*, No. 04 Civ. 1089 (GEL), 2004 U.S. Dist. LEXIS 16088, at *30 (S.D.N.Y. Aug. 13, 2004)).

The Court lacks specific personal jurisdiction over the Defendants under Section 302(a)(3), because SBM has not suffered a cognizable injury *within the State of New York*. SBM, by its own admission, is a resident of Monaco, not New York. (*See* Am. Compl. ¶ 5.) Although SBM claims to share an office in New York with the Official Monegasque Consulate and the Monaco Government Tourism Office, (Am. Compl. ¶ 19), it appears that it is a third party, Societe Des Bains De Mer USA, Inc. ("SBM USA, Inc."), and not SBM itself who occupies that office. (*See* Fountain Decl. ¶ 6 & Ex. C at p. 7.) SBM does not allege that SBM USA, Inc. owns any of the trademark rights at issue in this case. Moreover, SBM USA, Inc. does not own any federal trademark registrations or applications whatsoever including those at issue in this case. (*See id*. ¶ 11.) Rather, SBM alleges that *it* owns rights in the MONTE CARLO mark. (*See* Am. Compl. at pp. 6-8.) Thus, any alleged infringement of SBM's trademark rights does not constitute injury suffered *by SBM* within the State of New York. Further, SBM does not allege that it has lost sales or customers in New York or that it has been injured in any other way in New York.

"Because the lack of injury within the state disposes of this issue, it is unnecessary to consider the other elements of § 302(a)(3)." *See Keramchemie Gmbh v. Keramchemie (Canada), Ltd.*, 771 F. Supp. 618, 621 (S.D.N.Y. 1991). Accordingly, SBM has failed to make a *prima facie* showing of specific personal jurisdiction pursuant to Section 302(a)(3). Nevertheless, even

if the Court considers the other elements of Section 302(a)(3), SBM has failed to make a *prima facie* showing of specific personal jurisdiction under those elements, as discussed below.

### a.  The Defendants Are Not Subject to Specific Personal Jurisdiction Under CPLR § 302(a)(3)(i).

Section 302(a)(3)(i) provides for specific personal jurisdiction over a non-domiciliary defendant "if he . . . regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue *from goods used or consumed or services rendered, in the state* . . . ."  N.Y. C.P.L.R. 302(a)(3)(i).  (Emphasis added.)  To establish specific personal jurisdiction under Section 302(a)(3)(i) based on a demonstration that the defendant derives substantial revenue from sales in New York, the plaintiff must also show that the associated goods are "used or consumed in New York."  *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 200 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990).  SBM does not allege that either MGM MIRAGE's goods or services or Victoria Partners' goods or services are used, rendered, or consumed within the State of New York.  To the contrary, Victoria Partners' goods are sold and its services are rendered solely at its Monte Carlo Resort & Casino in the State of Nevada.  (*See* Wright Decl. ¶ 8.)

Accordingly, SBM has failed to make a *prima facie* showing of specific personal jurisdiction pursuant to Section 302(a)(3)(i).

### b.  The Defendants Are Not Subject to Specific Personal Jurisdiction Under CPLR § 302(a)(3)(ii).

Section 302(a)(3)(ii) provides for specific personal jurisdiction over a non-domiciliary defendant: "if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  N.Y. C.P.L.R. 302(a)(3)(ii).  The "test of whether a defendant expects or should reasonably expect his act to

have consequences within the State is an objective rather than subjective one." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999). The mere "likelihood or foreseeability that a defendant's product will find its way into New York" is insufficient to sustain jurisdiction. *Id.* (citations and internal quotation marks omitted). "Foreseeability must be coupled with evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market" or "purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York court." *Id.*

SBM has not made a *prima facie* showing of specific personal jurisdiction over the Defendants under Section 302(a)(3)(ii), because neither MGM MIRAGE nor Victoria Partners expected or should have reasonably expected their acts to have consequences in the State of New York. Victoria Partners had no expectation that its use of the MONTE CARLO mark for a hotel and casino in Las Vegas would cause consequences within the State of New York. Trademark law is fundamentally based upon the territoriality principal, which means that trademark rights are determined on a geographic basis. *See ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 155-156 (2d Cir. 2007). The Second Circuit as well as other courts have held that use of a mark in a foreign country creates no trademark rights in the United States, even if the foreign trademark owner advertises the mark in the United States; therefore, a U.S. citizen may properly, lawfully, and in good faith adopt and use a foreigner's unregistered trademark in the United States. *See, e.g., ITC Ltd.*, 482 F.3d at 155 ("[t]he territoriality principal requires the use to be in the United States for the owner to assert priority rights to the mark"); *Buti v. Impressa Perosa*, *S.R.L.*, 139 F.3d 98, 103-106 (2d Cir. 1998) (noting that "Impressa's registration and use of the Fashion Café name in Italy has not, given the territorial nature of trademark rights, secured it any rights in the name under the Lanham Act"); *Persons Co. v. Christman*, 900 F.2d 1565, 1568-1570 (Fed. Cir.

1990) (holding that knowledge of a foreigner's use of a trademark in a foreign country does not preclude good faith adoption and use by another in the United States); *Mother's Restaurants Inc. v. Mother's Other Kitchen, Inc.*, 218 U.S.P.Q. 1046, 1048 (T.T.A.B. 1983) ("prior use and advertising of a mark in connection with goods or services marketed in a foreign country (whether said advertising occurs inside or outside the United States) creates no priority rights in said mark in the United States as against one who, in good faith, has adopted the same or similar mark for the same or similar goods or services in the United States prior to the foreigner's first use of the mark on goods or services sold and/or offered in the United States"); *La Societe Anonyme des Parfums le Gallion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271 (2d Cir. 1974) ("It is well-settled that foreign use is ineffectual to create trademark rights in the United States"); *Le Blume Import Co. v. Coty*, 293 F.344, 350 (2d Cir. 1923) (observing that "the protection of a trade-mark in the United States is not to be defeated by showing a prior use of a like trade-mark in France, or in some other foreign country so long as "the one claiming protection is able to show that he was first to use it in this country").

Although SBM has allegedly maintained a New York office and has allegedly advertised its services in the United States through that office, it has not claimed to have provided casino services in the United States, let alone in the State of New York.  (*See generally* Am. Compl.). Accordingly, Victoria Partners could not have reasonably anticipated that its use of the MONTE CARLO mark in Las Vegas would somehow subject it to personal jurisdiction in New York. The same holds true for MGM MIRAGE, except that MGM MIRAGE itself does not use the MONTE CARLO mark for hotel or casino services anywhere.  (*See* Wright Decl. ¶ 7.)

Accordingly, SBM has failed to make a *prima facie* showing of specific personal jurisdiction pursuant to Section 302(a)(3)(ii).

### 4. The Defendants Are Not Subject to Specific Personal Jurisdiction Under CPLR § 302(a)(4).

Section 302(a)(4) provides for specific personal jurisdiction over a non-domiciliary defendant: "if he . . . owns, uses or possesses any real property situated within the state." SBM does not allege that the Defendants own, use, or possess real property located in the State of New York. Moreover, none of SBM's claims arise from the Defendants' ownership of real property located within the State of New York.

Accordingly, SBM has failed to make a *prima facie* showing of specific personal jurisdiction pursuant to Section 302(a)(4).

### 5. Conclusion Regarding New York's Long Arm Statute.

The Court should dismiss this action because the allegations contained within the Amended Complaint do not establish a *prima facie* case for exercising specific personal jurisdiction over the Defendants pursuant to New York's long arm statute, N.Y. CPLR § 302.

### B. The Exercise of Personal Jurisdiction Does Not Comport with Due Process.

SBM has not established that the exercise of specific personal jurisdiction over the Defendants in this case would comport with the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution. The Due Process Clauses of the Fifth and Fourteenth Amendments require that: (1) the defendant have sufficient "minimum contacts" with the forum state to justify the exercise of personal jurisdiction over the defendant, and (2) that the assertion of personal jurisdiction over the defendant be reasonable under the circumstances. *See Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945).

### 1. The Defendants Lack Minimum Contacts With New York.

The requirement of minimum contacts means that "in each case that there [must] be some act by which the defendant purposefully avails itself of the privilege of conducting activities

within the forum state, thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), such that the defendant "should reasonably anticipate being haled into court" there. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295-296 (1980). Here, the Defendants lack minimum contacts with the State of New York because they have not purposefully availed themselves of the privilege of conducting activities within the State of New York.

Specifically, the Defendants:

- Are not residents of New York;

- Do not maintain an office or other place of business in New York;

- Do not maintain any corporate records or documents in New York;

- Do not transact business in New York;

- Do not have any directors, officers, or employees who work or reside in New York;

- Do not maintain a registered agent for service of process in New York;

- Are not qualified, licensed, or otherwise authorized to conduct business in New York;

- Do not ship goods into or render services in New York;

- Do not own, use, or possesses any bank accounts, property, or other assets in New York;

- Do not hold any board meetings in New York; and

- Do not pay taxes to the State of New York.

(*See* Wright Decl. ¶ 6.)

SBM has failed to allege any action undertaken by either of the Defendants within the State of New York. Thus, SBM has not established that either of the Defendants have purposefully availed themselves of the privilege of conducting activities within the State of New

York.   Accordingly, SBM has failed to demonstrate that either of the Defendants have

"minimum contacts" with the State of New York sufficient to justify the Court's exercise of

personal jurisdiction over them.

> **2.    The Court Need Not Consider Whether the Exercise
> of Personal Jurisdiction Would Be Reasonable.**

"Once it has been decided that a defendant purposefully established minimum contacts

within the forum State, these contacts may be considered in light of other factors to determine

whether the assertion of personal jurisdiction would comport with 'fair play and substantial

justice.'"   *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co.* v.

*Washington*, 326 U.S., at 320)).   Thus, SBM must meet its burden of showing that the

Defendants have purposefully established minimum contacts within the State of New York

before the burden shifts to the Defendants to demonstrate that the exercise of personal

jurisdiction over them would be unreasonable under the five factor test articulated by the United

States Supreme Court in *Burger King*.[1]

Here, SBM has not met its burden of showing that the Defendants have purposefully

established minimum contacts within the State of New York.   SBM has not alleged any facts

establishing that either of the Defendants have purposefully availed themselves of the privilege

of conducting activities within the State of New York.   Therefore, the Court need not consider

whether the exercise of personal jurisdiction over the Defendants would be reasonable under the

*Burger King* factors.   However, if the Court concludes that the Defendants have minimum

---

[1]     The factors are: (1) "the burden on the defendant;" (2) "the forum State's interest in
adjudicating the dispute;" (3) "the plaintiff's interest in obtaining convenient and effective
relief;" (4) "the interstate judicial system's interest in obtaining the most efficient resolution of
controversies;" and (5) the "shared interest of the several States in furthering fundamental
substantive social policies." *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen
Corp.*, 444 U.S. at 292)).

contacts with New York and have purposefully availed themselves of the privilege of conducting activities within New York, the Defendants will address the reasonableness of the Court's exercise of personal jurisdiction over them in their reply memorandum.

## II.    THE COURT SHOULD DISMISS THIS ACTION FOR IMPROPER VENUE.

The Court should also dismiss this action for improper venue.  Pursuant to 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  Here, SBM has alleged that venue is proper under 28 U.S.C. § 1391(b) and (c).  (*See* Am. Compl. ¶ 10.)  Section 1391(b) provides that:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).  In addition, Section 1391(c) provides that a corporate defendant "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction."  28 U.S.C. § 1391(c). Furthermore, Section 1391(c) requires that a defendant be subject to personal jurisdiction in the *district* where the lawsuit is pending, in this case, the Southern District of New York.  *See id.*

As discussed in Part I, *supra*, the Defendants are not subject to personal jurisdiction anywhere within the State of New York.  Therefore, venue is improper and the Court should dismiss this action on that basis.

III.    **THE COURT SHOULD DISMISS THIS ACTION WITH PREJUDICE BECAUSE IT IS BARRED BY THE DOCTRINE OF LACHES.**

The Court should dismiss this action with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) because the Defendants' laches defense is clear on the face of the Amended Complaint. "When the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may consider the defense on a motion to dismiss." *Solow Bldg. Co., LLC v. Nine West Group, Inc.*, No. 00 Civ. 7685 (DC), 2001 U.S. Dist. LEXIS 8848, at *10 (S.D.N.Y. June 28, 2001), *aff'd*, No. 01-7878, 2002 U.S. App. LEXIS 21653 (2d Cir. Oct. 11, 2002) (citing *Lennon v. Seaman*, 63 F. Supp. 2d 428, 439 (S.D.N.Y. 1999)). This defense is available against both Lanham Act claims and New York state law claims of trademark infringement and unfair competition. *See Harley-Davidson, Inc. v. Estate of O'Connell*, 13 F. Supp. 2d 271, 279 (N.D.N.Y 1998) (citing *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1040-41 (2d Cir. 1980); *Tap Publ'ns., Inc. v. Chinese Yellow Pages (New York), Inc.*, 925 F. Supp. 212, 223 (S.D.N.Y. 1996)). Further, although it is an equitable defense, in the context of a trademark action it may be applied to bar both injunctive relief and damages. *See id.* (citing *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 366 (6th Cir.), *reh. denied*, 777 F.2d 1130 (1985), *cert. denied*, 476 U.S. 1158 (1986); *Avon Prods., Inc. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768, 798 (laches barred both injunctive relief and damages for Lanham Act claim)).

To prevail on the defense of laches, defendants must establish that: (1) the plaintiff had knowledge of defendants' use of its marks; (2) the plaintiff inexcusably delayed taking action; and (3) the defendants will be prejudiced by permitting plaintiff to assert its rights now. *See Solow Bldg. Co.*, 2001 U.S. Dist. LEXIS 8848 at *7 (citing *Fourth Toro Family Ltd. P'ship v. PV Bakery, Inc.*, 88 F. Supp. 2d 188, 196 (S.D.N.Y. 2000)). Although the burden of establishing

these factors is usually on the defendants, when the suit is brought after the statutory time has elapsed, "the burden is on the complainant to [allege] . . . the circumstances making it inequitable to apply laches in [its] case." *See Solow Bldg. Co.*, 2001 U.S. Dist. LEXIS 8848 at *7 (citing *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996)). Thus, "a presumption of laches applies in a trademark action if the plaintiff fails to bring suit within the six-year statute of limitations applicable to state-law fraud in New York." *Harley Davidson, Inc.*, 13 F. Supp. 2d at 18-19 (citing *Conopco, Inc.*, 95 F.3d at 191-92). This six-year period begins to run as soon as the plaintiff discovers the facts which create the cause of action. *See id.*

Here, the Court should dismiss this action with prejudice because it is clear from the face of the Amended Complaint that the applicable six-year limitations period for filing suit has expired. The Amended Complaint alleges that: "[d]uring the 1990's, more than a century after SBM created the Casino de Monte-Carlo, and decades after the Casino de Monte-Carlo became a well known brand for casino and related services in the United States, the Monte Carlo Resort & Casino Las Vegas ('Monte Carlo Resort & Casino'), owned and operated by Defendants, opened in Las Vegas, Nevada." (Am. Compl. ¶ 31.) SBM has omitted any allegation of its longstanding knowledge of Victoria Partners' operation of the Monte Carlo Resort & Casino in Las Vegas, Nevada. Nevertheless, in ruling on a motion to dismiss, a court "may take judicial notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action." *Harris v. N.Y. State Dep't of Health*, 202 F. Supp. 2d 143, 173 n.13 (S.D.N.Y. 2002). The court may also take judicial notice of the records from the parties' dispute before the U.S. Trademark Trial and Appeal Board (the "TTAB"). *See Santos v. Hecht*, No 06-CV-783 (JFB) (MLO), 2006 U.S. Dist. LEXIS 52423, at *2 (E.D.N.Y. July 31, 2006) (citing *Kramer v. Time Warner, Inc.*, 937

F.2d 767, 773 (2d Cir. 1991); Fed. R. Evid. 201(d)); *see also Thane Int'l, Inc. v. Trek Bicycle Corp*., No. CV 99-01470 DT (SHx), 1999 U.S. Dist. LEXIS 22031, at *20-21 (C.D. Cal. Dec. 20, 1999) (taking judicial notice of federal trademark application file), *rev'd on other grounds*, *Thane Int'l v. Trek Bicycle Corp*., 305 F.3d 894 (9th Cir. 2002).

On February 15, 2005, SBM filed Opposition No. 91164390 with the TTAB (the '390 Opposition"). (*See* Fountain Decl. ¶ 4 & Exs. A & B.) In the '390 Opposition, SBM sought to prevent Victoria Partners from obtaining a federal trademark registration for the MONTE CARLO mark for use in connection with casino services, as set forth in Victoria Partners' Application Serial No. 76/284,329 (the "'329 Application"). (*Id*.) During discovery, Victoria Partners propounded the following interrogatory:

> Identify the date on which [SBM] learned of [Victoria Partners'] use in the United States of the MONTE CARLO mark in connection with a resort hotel or casino and describe how [SBM] first became aware of such use. If [SBM] cannot determine the exact date, provide the . . . best approximation of the date.

(*See* Fountain Decl. ¶ 12 & Ex. K.) SBM answered this interrogatory as follows:

> [SBM's] best approximation of the date on which [it] learned of [Victoria Partners'] use in United States of the MONTE CARLO designation is the date on which [Victoria Partners] first began using the mark in commerce.

(*Id*.) SBM's directeur general, Mr. Bernard Lambert, affirmed the truth of this answer. (*See id*. & Ex. L.) Based upon SBM's interrogatory answer, SBM knew of Victoria Partners' use of the MONTE CARLO mark at least as early as June 21, 1996, the date on which Victoria Partners opened the Monte Carlo Resort & Casino.

Accordingly, SBM waited from June 21, 1996, to March 28, 2008, to file suit against Victoria Partners. Because the six-year statute of limitations has run, the defense of laches is clear on the face of the Amended Complaint, the presumption of laches applies, and SBM bears the burden of showing why the laches defense should not be applied. *See Solow Bldg. Co.*, 2001

17

U.S. Dist. LEXIS 8848 at *7 (citing *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996)).  Because SBM will not be able to demonstrate that its delay was excusable or that Victoria Partners has not been prejudiced by SBM's 12-year delay, the Court should dismiss this action with prejudice.

## IV.    SBM HAS FAILED TO STATE ANY CLAIM AGAINST MGM MIRAGE UPON WHICH RELIEF MAY BE GRANTED.

In addition to the fact that the Court lacks personal jurisdiction over the Defendants, the Court should dismiss this action against MGM MIRAGE pursuant to Federal Rule of Civil Procedure 12(b)(6), because SBM has not sufficiently alleged any claim against MGM MIRAGE upon which relief may be granted.

A court has the discretion to dismiss a complaint for failure to plead with the necessary specificity to state a proper cause of action.  *See Kittay v. Kornstein*, 230 F.3d 531, 542 (2d Cir. 2000) (holding a district court may *sua sponte* dismiss a complaint which does not comply with Rule 8); *Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 147 (S.D.N.Y. 2000); *Smith v. Metro North Commuter R.R.*, No. 98 Civ. 2528 (RWS), 2000 U.S. Dist. LEXIS 14168, at *6 (S.D.N.Y. Sept. 29, 2000) (both cases finding that the court has discretion to dismiss a complaint *sua sponte*, pursuant to Rule 12(b)(6), where plaintiff was given notice and an opportunity to be heard).

In the Amended Complaint, SBM improperly refers to the actions of Victoria Partners *and* MGM MIRAGE as the *combined* actions of the "Defendants," without distinguishing which actions are attributable to MGM MIRAGE and which actions are attributable to Victoria Partners.  The Amended Complaint does not allege what conduct MGM MIRAGE has *itself* engaged in to establish any of the claims alleged and, therefore, should be dismissed.  *See, e.g., Appalachian Enters. v. ePayment Solutions Ltd.*, No. 01 CV 11502(GBD), 2004 U.S. Dist.

LEXIS 24657, at *25-26 (S.D.N.Y. Dec. 7, 2004) (complaint dismissed where it improperly lumped defendants' conduct together failing to distinguish between the defendants' respective activities).

Moreover, the Amended Complaint contains only two allegations directly against MGM MIRAGE: (1) that MGM MIRAGE is the "ultimate parent" of Victoria Partners (Am. Compl. ¶ 6); and (2) that MGM MIRAGE operates a website containing the statement: "The Monte Carlo features the elegance of a European playground . . . [c]rystal chandeliers, imported marble and sculptured fountains . . . ." (Am. Compl. ¶ 34.) Neither of these allegations is sufficient to state a claim upon which relief can be granted. The fact that MGM MIRAGE is the corporate parent of Victoria Partners is, without more, insufficient to state a claim against MGM MIRAGE. Corporate parents and their subsidiaries are generally treated as separate legal entities. *See Carte Blanche Pte. v. Diners Club Int'l*, 2 F.3d 24, 26 (2d Cir. 1993). Absent circumstances warranting piercing the corporate veil or establishing direct control by the parent over the conduct of its subsidiary, a parent corporation is not liable for the acts of its subsidiaries. *See United States v. Bestfoods*, 524, U.S. 51, 55-56 (1998); *Darby v. Societe Des Hotels Meridiens*, No. 88 Civ. 7604 (RWS), 1999 U.S. Dist. LEXIS 9744, at *13 (S.D.N.Y. June 25, 1999). The Amended Complaint does not contain any allegations that would warrant piercing the corporate veil. The Amended Complaint does not allege that MGM MIRAGE controls the acts of Victoria Partners. Thus, the allegation that MGM MIRAGE is the corporate parent of Victoria Partners fails to state a claim upon which relief may be granted.

Similarly, the allegation that MGM MIRAGE operates a website containing the words "Monte Carlo" (Am. Compl. ¶ 34) is insufficient to state a claim upon which relief may be granted. While Victoria Partners has offered both services and goods under the MONTE

CARLO mark, MGM MIRAGE has not done so and is not doing so.  (*See* Wright Decl. ¶ 7.)

Moreover, the fact that MGM MIRAGE's website identifies the Monte Carlo Resort & Casino

by name is clearly a fair use and not an infringing use.  MGM MIRAGE's reference to the Monte

Carlo Resort & Casino is no different than any other reference found within a travel guide,

magazine, newspaper, or other publication that identifies and describes the goods and services of

another.  Furthermore, the Amended Complaint does not contain any allegations that would

establish MGM MIRAGE's liability as a contributory infringer.

Accordingly, the Court should dismiss the Amended Complaint with respect to both

Defendants for the reasons set forth in Parts I – III, *supra*, and should also dismiss the Amended

Complaint, with respect to MGM MIRAGE, because SBM has failed to state any claim upon

which relief can be granted against MGM MIRAGE.

## V.    IF THE COURT DOES NOT DISMISS THIS ACTION, IT SHOULD TRANSFER IT TO THE DISTRICT OF NEVADA.

If the Court does not dismiss this action for the reasons set forth above it should transfer

it to the District of Nevada pursuant to 28 U.S.C. § 1404(a) because Nevada is a more convenient

forum.

There is no plausible reason for this action to remain in this district.  SBM is a foreign

company organized under the laws of Monaco.  (Am. Compl. ¶ 5.)  SBM's headquarters and

principal place of business are located in Monaco.  (*Id*.)   While SBM claims to have an office in

New York City (*see id*. ¶¶ 19-20), the office SBM refers to is actually operated by a different

entity, Societe Des Bains de Mer USA, Inc.  (*See* Fountain Decl. ¶ 6 & Ex. C at p. 7.)  That

office has only four employees.  *See Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle

des Etrangers a Monaco*, 329 F.3d 359, 361 (4th Cir. 2993) (noting employment of only four

employees in the New York City office).  Moreover, SBM is not registered or qualified to do

business in New York.  (*See* Fountain Decl. ¶¶ 8-10 & Exs. F-I.)  Thus, SBM is not a resident of this forum and has only minimal and indirect ties to this district.

In contrast, SBM has substantial ties to Nevada.  In 2003, it paid $45,000,000 USD for 3.6% of Wynn Resorts' common stock.  (*See* Fountain Decl. ¶ 13 & Ex. M.)  Thus, Plaintiff is an owner of the Wynn Las Vegas hotel and casino on the Las Vegas Strip.  Moreover, Plaintiff has entered into a joint marketing agreement with Wynn Resorts.  (*See id*.)  "The strategic alliance includes an exchange of management expertise and the development of cross-marketing initiatives between Wynn Resorts and SBM."  (*See id*..)  Accordingly, while neither MGM MIRAGE nor Victoria Partners conducts business in the State of New York, SBM is actively involved in the operations of one of the world's largest hotel-casinos in Las Vegas, Nevada.

The Defendants are based in Las Vegas, Nevada.  (*See* Wright Decl. ¶¶ 3-4.)  The alleged infringement is occurring at the Monte Carlo Resort & Casino in Las Vegas, Nevada. (*See generally* Am. Compl.)  As discussed more fully below, numerous witnesses (both party and non-party) reside in Las Vegas, Nevada.  Because the Defendants are both located in and operate from Nevada, SBM's claims arise from the Defendants' business activities in Nevada.

Section 1404(a) allows this Court discretion to transfer the action to any other district "where it might have been brought."  28 U.S.C. § 1404(a); *Schwartz v. R.H. Macy's, Inc.*, 791 F. Supp. 94 (S.D.N.Y. 1992).  Under the federal venue statute, 28 U.S.C. § 1391, venue is generally proper in a judicial district where any defendant resides, where a substantial part of the events or omissions giving rise to the plaintiff's claim occurred, or where any defendant may be found or is subject to personal jurisdiction.  *See* 28 U.S.C. § 1391(a)-(b).  This action could have been brought in the District of Nevada because that is where the Defendants' principal places of

business are located, where the allegedly infringing activity has and is occurring, and where the Defendants are subject to personal jurisdiction.

In determining whether to transfer a case, the Court should consider: (1) the convenience of witnesses; (2) the availability of process to compel the attendance of unwilling witnesses; (3) the convenience of the parties; (4) the locus of operative facts; (5) the location of relevant documents and relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of circumstances. *See, e.g., Anadigics, Inc. v. Raytheon*, 903 F. Supp. 615, 617 (S.D.N.Y. 1995). Balancing these factors, the District of Nevada is a more convenient forum for all of the parties and witnesses in this case.

## A.    Convenience of the Witnesses

Traditionally, the most important factor in determining whether to grant a motion to transfer is the convenience of the witnesses, *Arrow Electronics Inc. v. Ducommun Inc.,* 724 F. Supp. 264 (S.D.N.Y. 1989), especially non-party witnesses. *See Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005). The moving party must specify the witnesses to be called and provide general information as to what their testimony will cover. *See Factors Etc. Inc. v. Pro Arts Inc.,* 579 F.2d 215, 218 (2d Cir. 1978). Based on the information provided by the movant, courts may evaluate the witnesses and afford substantial weight in the balancing calculus to those it deems material. *See Indian Harbor,* 419 F. Supp. 2d at 404 ("[O]nly material witnesses are afforded substantial weight in the balancing calculus"); *Millennium v. Hyland Software, Inc.*, No. 03 Civ. 3900, 2003 U.S. Dist. LEXIS 22239, at *9

(S.D.N.Y. Dec. 10, 2003) ("When weighing the convenience of witnesses, courts must consider the materiality, nature, and quality of each witness").

In this case, scores of the Defendants' past and existing directors, officers, and employees are located in Nevada and may be called as witnesses at trial.  In the '390 Opposition, Victoria Partners identified the following thirteen (13) witnesses:   Tony Alamo; Kevin Blair; Mike Catallano; April Chaparian; Mike Ensign; Michelle Knolls; Yvette Landau; John Marz; Chris McGhey; Ted Quirk; Bill Richardson; Glen Schaeffer; and Whitney Thier.  (*See* Fountain Decl. ¶ 15.)   At least eight (8) of these witnesses (including Alamo, Blair, Ensign, Landau, Quirk, Richardson, Schaeffer, and Their) are not employed by MGM MIRAGE, Victoria Partners, or any of MGM MIRAGE's various subsidiaries.   (*See* Wright Decl. ¶ 9.)   In addition, the architectural firm that designed the Monte Carlo Resort & Casino, Carter and Burgess, Inc., is located in Las Vegas, Nevada.  (*Id.*)

Because the events giving rise to SBM's claims occurred in Nevada and because a large number of potential party and non-party witnesses are located in Nevada, this factor favors transfer to the District of Nevada.

## B.    Availability of Process

The Court cannot require, "a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business," to appear before it.   *See* Fed. R. Civ. P. 45 (c)(3)(A)(ii).   Thus, because Nevada is over 2,000 miles from New York, this Court cannot compel the attendance of non-party witnesses located in Nevada to testify at a trial in New York.   As set forth above, at least eight (8) of the witnesses in this case are non-party witnesses located in Nevada.   Other non-party witnesses include former directors, officers, and employees of MGM MIRAGE and

Victoria Partners; consumers who have visited the property in Las Vegas; and architects, designers, and others involved in the design and construction of the Monte Carlo Resort & Casino—all of whom are located in Las Vegas.

In this case, all nine (9) of the non-party witnesses identified to date are within the subpoena power of the District of Nevada, but none are subject to the subpoena power of this Court.

### C.    Convenience of the Parties

SBM's choice of forum appears to be motivated by the fact that it has a subsidiary located in New York, by the fact that New York is closer to Monaco than it is to Nevada, and by the fact that SBM's attorneys are located in New York. However, none of these concerns outweigh the inconvenience and burden Defendants would suffer if they were required to litigate in New York. The fact that SBM's subsidiary, SBM USA, Inc., employs four people in New York does not significantly weigh in favor of maintaining this action in New York. While it does take less time to travel from Monaco to New York than it does to travel from Monaco to Las Vegas, SBM's party witnesses would only need to make such a trip for a settlement conference and/or trial. In addition, there are regularly several hundred one-stop flights between Paris and Las Vegas, Nevada. (*See* Fountain Decl. ¶ 14.) Moreover, SBM's corporate documents and records are most likely located in Monaco, not New York. Shipping them to Nevada rather than to New York may cost slightly more but would not be any more burdensome. Thus, the fact that Nevada is farther from Monaco than New York would not make litigating in Nevada substantially more inconvenient for SBM. However, litigating in Nevada would be substantially more convenient for the Defendants because all of the Defendants' witnesses and documents are located in Nevada. Although SBM's attorneys are based in New York, courts

have accorded "little weight" to the convenience of plaintiffs' attorneys.  *See Kolko v. Holiday Inns*, 672 F. Supp. 713, 715 (S.D.N.Y. 1987).

Accordingly, this factor favors transfer to the District of Nevada.

### D.    The Locus of Operative Facts

Courts routinely transfer cases when the principal events occurred in another district and the principal witnesses are located there.  *See Billing v. Commerce One Inc.,* 186 F. Supp. 2d 375, 377 (S.D.N.Y. 2002).  To determine where the locus of operative facts lies, courts look to "the site of events from which the claim arises."  *800-Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F. Supp. 128, 134 (S.D.N.Y. 1992).  Here, because the Defendants are headquartered and conduct business in Nevada and because the Monte Carlo Resort & Casino is located in Nevada, SBM's claims arise out of the Defendants' business activities in Nevada.  Thus, Nevada is the locus of operative facts.  Accordingly, this factor favors transfer to Nevada.

### E.    The Location of Relevant Documents and the Relative Ease of Access to Sources of Proof

It is well settled that, "given the conveniences of modern transportation and communication," *United States v. Martino*, No. 00 Cr. 389, 2000 U.S. Dist. LEXIS 17945, at *17-18 (S.D.N.Y. Dec. 14, 2000), the "location of relevant documents is of little consequence one way or the other."  *United States v. Coriarty*, No. 99 Cr. 1251, 2000 U.S. Dist. LEXIS 11040, at *3 (S.D.N.Y. Aug. 7, 2000).

However, there is one source of proof that exists only in Las Vegas --  the Monte Carlo Resort & Casino itself.  In the Amended Complaint, SBM alleges that the Defendants "designed and decorated their resort and casino to resemble the real Casino de Monte-Carlo, with an art nouvelle façade, grand arches, fountains, large romance-based statuary, polished marble, fine inlaid woods, painted ceilings, elaborate chandeliers, cobblestone and brick-village square, and

other subtle visual esthetic touches . . . ."  (Am. Compl. ¶ 35.)  SBM also alleges that: "The low-quality level of services Defendants have provided in connection with the 'Monte Carlo' designation, compared to the brand to which they have illegally attached themselves, dilutes and tarnishes SBM's famous mark CASINO DE MONTE-CARLO."  (*Id*. ¶ 3.)

The possibility of a view of the premises, if such a view is appropriate to the action, is a factor to be considered in deciding a motion to transfer venue.  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Breindel v. Levitt & Sons*, 294 F. Supp. 42, 44 (E.D.N.Y. 1968) ("If New York City were so far from the site to be viewed that an inspection would be precluded, this might be decisive . . . ."); *Spencer, White & Prentis, Inc. v. Jacet Constr. Corp.*, 258 F. Supp. 473, 474 (S.D.N.Y.1966) ("It may be desirable for the court and jury to visit the building site, which is less than a mile from the United States Courthouse in Boston").

The Defendants will want the jury to conduct a viewing of the Monte Carlo Resort & Casino so that they can see in person the property as a whole and each of the various elements (including the "subtle visual esthetic touches") as well as the high level of services provided to hotel and casino guests.  These facts are relevant to the issues in this case, but would not be adequately captured through mere video or photographs.  This central evidence in the case is located in the District of Nevada, not in the Southern District of New York.

F.    **The Parties' Relative Means**

Here, all parties are large corporate entities presumably with substantial resources. Accordingly, this factor is neutral.  *See, e.g., Flowserve Corp. v. BMCE, Inc.*, No. 05 Civ. 8075 (WHP), 2006 U.S. Dist. LEXIS 73942, at *9 (S.D.N.Y. Oct. 12, 2006).

### G.    The Forum's Familiarity with the Governing Law

Federal courts commonly apply state substantive law, which may not be the law of the state in which the federal court sits.  *See, e.g.*, 28 U.S.C. § 1367(a) (allowing a federal court to hear and decide a state law claim that arises between citizens of the same state).  For this reason, some courts give this factor little weight.  *See, e.g. Prudential Sec. Inc. v. Norcom Dev., Inc.*, No. 97 Civ. 6308 (DC), 1998 U.S. Dist. LEXIS 10569, at *17 (S.D.N.Y. July 15, 1998) ("The 'governing law' factor is to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states.").  This factor is, at best, neutral.

### H.    The Weight Accorded to the Plaintiff's Chosen Forum.

Although the plaintiff's choice of forum is entitled to "substantial weight," this presumption does not apply if the plaintiff chooses a foreign forum and the claims bear little relation to the chosen forum.  *See Bassili v. Chu*, 242 F. Supp. 2d 223, 232 (W.D.N.Y. 2002); *Anadigics, Inc.*, 903 F. Supp. at 616; *Bordiga v. Directors Guild*, 159 F.R.D. 457, 462 (S.D.N.Y. 1995).  As set forth above, SBM is a foreign company that is not located in New York, does not have its own office in New York, and is not otherwise qualified to do business in New York.  Moreover, because all of SBM's claims arise from acts allegedly undertaken by the Defendants in Nevada, not New York, SBM's claims have virtually no relation to New York.  Accordingly, SBM's choice of forum is entitled to very little, if any, weight.

### I.    Trial Efficiency and the Interests of Justice.

This factor has been described as broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer. *Schneider v. Sears,* 265 F. Supp. 257, 263 (S.D.N.Y. 1967).  If a viewing of Victoria Partners'

Monte Carlo Resort & Casino is necessary, concerns of trial efficiency and judicial economy weigh in favor of transfer to the District of Nevada.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court dismiss this action for lack of personal jurisdiction or dismiss this action with prejudice for failure to state a claim upon which relief can be granted.  In the alternative, the Defendants request that the Court transfer this action to the District of Nevada.

Dated:  this 19th day of May, 2008.

By: _____/s Jonathan E. Moskin

Jonathan E. Moskin (JM-9814)
E. Michelle Dean (ED-0104)
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 819-8200

-and-

Michael J. McCue (*pro hac vice* pending)
Jonathan W. Fountain (*pro hac vice* pending)
LEWIS AND ROCA LLP
3993 Howard Hughes Pkwy., Suite 600
Las Vegas, NV 89169
(702) 949-8200