UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SOCIETE DES BAINS DE MER ET DU          :
CERCLE DES ETRANGERS A
MONACO,                                 :

                Plaintiff,          :

      vs.                               :

MGM MIRAGE AND VICTORIA                  :
PARTNERS, L.P.

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ECF Case**

Case No.  08-CV-03157(HB)


**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR, IN THE
ALTERNATIVE, TO TRANSFER THIS CASE TO THE DISTRICT OF NEVADA**

## TABLE OF CONTENTS

                                                                                              **Page**

PRELIMINARY STATEMENT ...............................................................................1

FACTS ...............................................................................................................2

    A.    SBM's United States Operations Are Based In New York. ...................2

    B.    Defendants Regularly Solicit Business In New York And Their Infringing
        Activities Are Likely To Cause Confusion Among New York Consumers. ...........2

ARGUMENT .....................................................................................................6

I.    DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION UNDER
    NEW YORK'S LONG-ARM STATUTE ..............................................6

    A.    Defendants Are Subject To Personal Jurisdiction Under CPLR §
        302(a)(1). ...........................................................................7

    B.    Defendants Are Subject To Personal Jurisdiction Under § 302(a)(3). ...................8

        1.    Defendants Have Committed Tortious Acts That Cause SBM
            Injury Within New York. .....................................................9

        2.    Defendants Are Subject To Personal Jurisdiction Under §
            302(a)(3)(i). .....................................................................9

        3.    Defendants Are Subject To Personal Jurisdiction Under §
            302(a)(3)(ii). ...................................................................10

    C.    Exercising Jurisdiction Over Defendants Comports With Due Process. ...............12

    D.    Should The Court Find That SBM Has Failed To Make A *Prima Facie*
        Showing Of Jurisdiction, SBM Should Be Granted Jurisdictional
        Discovery. ...........................................................................12

II.    VENUE IS PROPER ......................................................................13

III.    THIS ACTION IS NOT BARRED BY THE DOCTRINE OF LACHES ...................13

    A.    Laches Is An Affirmative Defense And Therefore Premature At This
        Stage. ...............................................................................14

    B.    If The Court Considers Laches At This Stage, It Should Still Deny
        Defendants' Motion. .............................................................14

1.  Because Laches Is An Equitable Defense, It Is Not Available To Defendants Because They Have Engaged In Inequitable Conduct. ...........14

2.  Even If The Court Overlooks Defendants' Willfulness, Laches Fails On The Merits. .....................................................................16

    (a)  The Six-Year Burden Shifting "Statute" Does Not Apply. ...........16

    (b)  Even If The Court Shifts The Burden, Laches Fails On The Merits. ...........................................................................18

IV.  DEFENDANTS' MOTION TO DISMISS MGM MIRAGE UNDER RULE 12(B)(6) SHOULD BE DENIED .....................................................20

V.  THE COURT SHOULD NOT TRANSFER THIS ACTION TO THE DISTRICT OF NEVADA...............................................................................21

    A.  Convenience Of The Witnesses ...........................................22

    B.  The Location Of Relevant Documents And The Relative Ease Of Access To Sources Of Proof .................................................23

    C.  Convenience Of The Parties ...............................................25

    D.  The Locus Of Operative Facts ............................................26

    E.  Availability Of Process ......................................................27

    F.  Relative Means Of The Parties ............................................27

    G.  The Forum's Familiarity With The Governing Law..............................28

    H.  The Weight Accorded To The Plaintiff's Chosen Forum......................28

    I.  Trial Efficiency And The Interests Of Justice .................................28

CONCLUSION..............................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
    960 F.2d 1020 (Fed. Cir. 1992).................................................................................18

*Alpha Int'l, Inc. v. T-Reproductions, Inc.*,
    No. 02 Civ. 9586, 2003 WL 21511957 (S.D.N.Y. Jul. 1, 2003) ...........................12

*Am. Network, Inc. v. Access Am./Connect Atlanta, Inc.*,
    975 F. Supp. 494 (S.D.N.Y. 1997) ......................................................................9, 10

*Appalachian Enters. v. ePayment Solutions Ltd.*,
    No. 01 CV 11502, 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004)............................21

*Bolt Elec., Inc. v. City of New York*,
    53 F.3d 465 (2d Cir. 1995)......................................................................................20

*Brown v. Grand Hotel Eden*,
    214 F. Supp. 2d 335 (S.D.N.Y. 2002)......................................................................8

*Carruthers v. Amtrak*,
    No. 95 Civ. 0369, 1995 WL 378544 (S.D.N.Y. June 26, 1995).............................27

*Chew v. Dietrich*,
    143 F.3d 24 (2d Cir. 1998).......................................................................................12

*Citibank, N.A. v. Citytrust*,
    644 F. Supp. 1011 (E.D.N.Y.1986) ........................................................................17

*Citigroup Inc. v. City Holding Co.*,
    97 F. Supp. 2d 549 (S.D.N.Y. 2000).......................................7, 8, 9, 22, 25, 26, 27, 28

*City of New York v. Cyco.Net, Inc.*,
    383 F. Supp. 2d 526 (S.D.N.Y. 2005)......................................................................7

*Cuban Cigar Brands N.V. v. Upmann Int'l., Inc.*,
    457 F. Supp. 1090 (S.D.N.Y. 1978)..............................................................15, 16, 20

*D.H. Blair & Co. v. Gottdiener*,
    462 F.3d 95 (2d Cir. 2006).....................................................................................6, 7

*Dealtime.com v. McNulty*,
    123 F. Supp. 2d 750 (S.D.N.Y. 2000)....................................................................22

*Dwyer v. General Motors Corp.*,
    853 F. Supp. 690 (S.D.N.Y. 1994) ...................................................................27, 28

*Elec. Commc'ns., Inc. v. Elec. Components for Indus. Co.*,
    443 F.2d 487 (8th Cir. 1971) ..................................................................................16

Filus v. Lot Polish Airlines,
    907 F.2d 1328 (2d Cir. 1990).................................................................................12

Fitzpatrick v. Sony-BMG Music Entertainment, Inc.,
    No. 07 Civ. 2933, 2007 WL 4358471.............................................................17, 18

Fort Knox Music, Inc. v. Baptiste,
    47 F. Supp. 2d 481 (S.D.N.Y. 1999)......................................................................14

GTFM v. Int'l Basic Source, Inc.,
    No. 01 Civ. 6203, 2002 WL 31050840 (S.D.N.Y. Sept. 12, 2002).........................13

Gross v. BBC,
    386 F.3d 224 (2d Cir. 2004)............................................................................21, 28

Harlequin Enters. Ltd. v. Gulf & Western Corp.,
    644 F.2d 946 (2d Cir. 1981)....................................................................................15

Harley Davidson, Inc. v. Grottanelli,
    164 F.3d 806 (2d Cir. 1999)....................................................................................15

Harley-Davidson, Inc. v. O'Connell,
    13 F. Supp. 2d 271 (N.D.N.Y. 1998).....................................................................18

Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.,
    219 F.3d 104 (2nd Cir. 2000)..................................................................................14

Hollins v. U.S. Tennis Assoc.,
    469 F. Supp. 2d 67 (E.D.N.Y. 2006) .....................................................................10

Hsin Ten Enter. USA, Inc. v. Clark Enters.,
    138 F. Supp. 2d 449 (S.D.N.Y. 2000)...............................................................7, 12

Int'l Bancorp, LLC v. Société des Bains de Mer et du Cercle des Etrangers à Monaco,
    192 F. Supp. 2d 467 (E.D.Va. 2002) ...............................................................11, 16

Int'l Bancorp, LLC v. Société des Bains de Mer et du Cercle des Etrangers à Monaco,
    329 F.3d 359 (4th Cir. 2003) ...........................................................................11, 16

Int'l Bancorp, LLC v. Société des Bains de Mer et du Cercle des Etrangers à Monaco,
    540 U.S. 1106 (2004).............................................................................................17

Karlen v. New York University,
    464 F. Supp. 704 (S.D.N.Y. 1979) ........................................................................14

Lennon v. Seaman,
    63 F. Supp. 2d 428 (S.D.N.Y. 1999)......................................................................14

Mattel, Inc. v. Adventure Apparel,
    No. 00 Civ. 4085(RWS), 2001 WL 286728 (S.D.N.Y. Mar. 22, 2001) ......................2, 7, 8, 13

National Football League v. Coors Brewing Co.,
    1999 WL 1254122, 205 F.3d 1324 (2d Cir. 1999) ................................................20

New Angle Pet Prods., Inc. v. MacWillie's Gold Prods., Inc.,
    No. 06-CV-1171, 07 WL 1871345 (E.D.N.Y. June 28, 2007) ....................................8

Novak v. Overture Services, Inc.,
    309 F. Supp. 2d 446 (E.D.N.Y. 2004) .......................................................................7

Obabueki v. Int'l Business Machines Corp.,
    Nos. 99 Civ. 11262 & Civ. 12486, 2001 WL 921172 (S.D.N.Y. Aug. 14, 2001)...................8

Orb Factory, Ltd. v. Design Science Toys, Ltd.,
    6 F. Supp. 2d 203 (S.D.N.Y. 1998) ..............................................................21, 22

PDK Labs, Inc. v. Proactive Labs, Inc.,
    325 F. Supp. 2d 176 (E.D.N.Y. 2004) ..........................................................................9

Panterra Engineered Plastics, Inc. v. Transp. SYS. Solutions, LLC,
    455 F. Supp. 2d 104 (D.Conn. 2006)..................................................21, 23, 25

Pearson Ed., Inc. v. Shi,
    525 F. Supp. 2d 551 (S.D.N.Y. 2007)........................................................................12

Philip Morris USA Inc. v. Veles Ltd.,
    No. 06 CV 2988(GBD), 2007 WL 725412 (S.D.N.Y. Mar. 12, 2007)...............................2, 8

Porina v. Marward Shipping Co., Ltd.,
    No. 05 Civ. 5261, 2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006) ....................................12, 13

ProFitness Physical Therapy Center v. Pro-Fit Orthopedic and Sports
    Physical Therapy P.C.,
    314 F.3d 62 (2d Cir. 2002)........................................................................................19

Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.,
    748 F.2d 774 (2d Cir.1984)........................................................................................20

Time Prods. v. J. Tiras Classic Handbags, Inc.,
    No. 93 Civ. 7856, 1994 WL 363930 (S.D.N.Y. July 13, 1994) ............................................11

Tri-Star Pictures, Inc. v. Unger,
    14 F. Supp. 2d 339 (S.D.N.Y. 1998)........................................................................15

## Statutes

28 U.S.C. § 1404(a) ......................................................................................22. 23

Federal Rules of Civil Procedure

    Rule 8(a)(2) ................................................................................................21

    Rule 8(c)......................................................................................................14

    Rule 9(b) ....................................................................................................21

    Rule 12(b)(6)..........................................................................................20, 21

Federal Rules of Evidence

    Rule 403 ..................................................................................................24


N.Y. CPLR

      § 302(a)(1) ...........................................................................................7, 8

      § 302(a)(3) ...........................................................................................8, 11

      § 302(a)(3)(i) ........................................................................................9, 10

      § 302(a)(3)(ii)......................................................................................10, 11, 12

## Other Authorities

J. Thomas McCarthy, 6 McCarthy on Trademarks and Unfair Competition
    § 31:16, § 31:19, § 31:23 (4th ed. 2008).............................................16, 17, 18, 19

## PRELIMINARY STATEMENT

New York is the presumptively valid forum for this litigation. Even without the aid of a presumption, however, New York is the most convenient and logical forum for this litigation. Defendants Victoria Partners, L.P.'s and MGM Mirage's willful acts of trademark piracy have injured consumers and Plaintiff within this state. Defendants are clearly subject to personal jurisdiction in New York, where they regularly solicit business through interactive websites. Using Defendants' websites, New York consumers can purchase entire vacation packages at Defendants' Monte Carlo Resort & Casino with just a few clicks of a button. Defendants' websites enable New York consumers to book and purchase flights from New York airports to Las Vegas, reserve and pay for rooms at Defendants' resort, open lines of credit in Defendants' casino, and much more.

Moreover, for several decades, the sole United States office of Plaintiff Société des Bains de Mer et du Cercle des Etrangers à Monaco ("SBM") has been located in New York City, and SBM's employees who work in the New York office reside in New York City. Furthermore, New York is far more convenient than is Las Vegas for SBM's Monaco-based witnesses and principals.

Finally, Defendants' motion to dismiss this action based on the doctrine of laches is both premature and meritless. The equitable defense of laches is not available to Defendants because they willfully and intentionally infringed SBM's MONTE CARLO mark. Even if the defense were available, however, it is an affirmative defense that must be proved by Defendants, who have not demonstrated that the burden of proof should be shifted to SBM. Laches is further inapplicable here because any delay by SBM in bringing suit is excusable and has not resulted in cognizable prejudice to Defendants.

## FACTS

A.    <u>SBM's United States Operations Are Based In New York.</u>

SBM's wholly-owned subsidiary, Société des Bains de Mer U.S.A., Inc. ("SBM USA"), maintains its sole office in New York City at 565 Fifth Avenue. (Declaration of Bernard Lambert, dated July 2, 2008 ("Lambert Decl."), at ¶ 2.) SBM USA is funded entirely by SBM, and its employees report directly to SBM's officers. (<u>Id.</u> at ¶ 3.) SBM USA exists solely to carry out business on behalf of SBM in the United States. (<u>Id.</u> at ¶ 3.) The head of SBM's New York office, who is knowledgeable about SBM's marketing and sales activities in the United States, is likely to be called as witnesses in this case. (<u>Id.</u> at ¶ 4.)

B.    <u>Defendants Regularly Solicit Business In New York And Their Infringing Activities Are Likely To Cause Confusion Among New York Consumers.</u>

Defendants' Monte Carlo Resort & Casino website, located at <www.montecarlo.com>, and MGM Mirage website, located at <www.mgmmirage.com>, are highly interactive. The Monte Carlo Resort & Casino website offers New York residents several ways to book a trip to the resort and casino. By clicking on the "Air and Hotel Packages" link, located on the website's homepage, New Yorkers can "[c]onveniently book flight and hotel packages on one reservation and enhance [their] stay with show tickets, activities, round-trip airport/hotel transfers, a rental car or more." (Declaration of Nicole R. Patterson, dated July 2, 2008 ("Patterson Decl."), ¶ 3, Ex. 2.)[1] Both New

---

[1]    SBM submits the Patterson Decl. not to manufacture a contact between Defendants and New York, but rather to demonstrate to the Court the manner in which Defendants' interactive websites target the New York market. Defendants interact with New York residents in this manner on a significant and regular basis. Courts have held that sales made to a plaintiff's investigator (as opposed to an ordinary consumer) in order to demonstrate a defendant's contacts with the forum are sufficient to support a finding of jurisdiction. <u>Philip Morris USA Inc. v. Veles Ltd.</u>, No. 06 CV 2988(GBD), 2007 WL 725412, *5 (S.D.N.Y. Mar. 12, 2007) (evidence of one sale to plaintiff's investigator sufficiently established <i>prima facie</i> showing of jurisdiction); <u>Mattel, Inc. v. Adventure Apparel</u>, No. 00 Civ. 4085(RWS), 2001 WL 286728, *3 (S.D.N.Y. Mar. 22, 2001) (same). (footnote continued)

York - La Guardia and New York - JFK are featured departure airports in Defendants' Departure City menu.[2] (Id. at ¶ 14, Exs. 3-4.) Upon opting for either New York airport and entering departure and return dates, Defendants' Monte Carlo Resort & Casino website processes the consumer's request and generates a package summary. (Id. at ¶¶ 15-16, Exs. 5-6.) With one click on the "BOOK THIS VACATION" button, New Yorkers are directed to checkout to complete the transaction. (Id. at ¶17, Ex. 7.) Checkout consists of three steps. At Step #1, consumers are asked to review their itinerary. (Id.) At Step #2, "Traveler Information," consumers are asked to provide their first and last names, telephone number, email address, a password, frequent flyer number, and seat preference. (Id. at ¶17, Ex. 9.) Defendants send consumers an email confirmation to the provided email address and collect telephone numbers in the event Defendants' customer care team needs to reach the customer. (Id. at ¶¶19-20, Exs. 9, 11-12.) At Step #3, "Apply Payment," consumers provide their credit card information and billing address, including street address, city, state, and zip code. (Id. at ¶17, Ex. 9.) Defendants require full payment and the customer's acceptance of Defendants' Terms & Conditions at booking. (Id. at ¶¶ 17-18, Exs. 8-9.)

New Yorkers can also book just a hotel stay through Defendants' Monte Carlo Resort & Casino website by clicking on either the "Reservations" or "Direct Advantage" links, both located on the website's homepage. (Id. at ¶¶ 45-46, 57-58, Exs. 1, 50.) Defendants declare that there is "no better way to book" than directly through their websites:

> Book your accommodations online and receive exclusive offers and benefits!! Nothing has ever been easier! Booking through Direct Advantage gets you access to the best at MONTE CARLO, all in one location.

---

Defendants certainly intend that ordinary New York consumers will make purchases through their websites, and New York consumers undoubtedly do so.

[2] Newark airport, which is in close proximity to New York City, and services the New York metropolitan market, is also included in Defendants' Departure City menu. (Id. at Ex. 61.)

(Id. at ¶ 58, Ex. 50.)  To book a room, consumers first enter their arrival date, the number of nights they plan to stay, and the number of guests.  (Id. at ¶ 46, Exs. 39-40.)  Consumers are able to check rates and promotions through links offered on this page.  (Id. at Ex. 40.)  Upon entering their arrival information, consumers are presented with available rooms, any of which can be easily booked by simply clicking on the "BOOK THIS ROOM" or "BOOK THIS SUITE" button.  (Id. at ¶¶ 47-48, Exs. 41-42.)  Once consumers select the room they wish to book, they are directed to the Guest Information page.  (Id. at ¶ 48, Ex. 42.)  Defendants collect the guest's name, address, telephone number, credit card information, and email address.  (Id. at ¶ 49, Ex. 43.)  Booking guests can elect to receive email offers from the Monte Carlo Resort & Casino before submitting their information. (Id. at Ex. 43.)  Defendants also provide a comments box, in which consumers can make special requests that Defendants represent they will do their best to accommodate.  (Id.)  New York consumers receive an email from Defendants confirming that their reservation has been successfully booked.  (Id. at ¶¶ 51-52, Exs. 45-46.)

In addition to providing a simple conduit through which New Yorkers can book a vacation, the website allows New York residents to enroll for Defendants' Players Club, which offers rewards based on the member's gaming activities at the Monte Carlo Resort & Casino.[3]  (Id. at ¶¶ 31-36, Exs. 22-28.)  To join, consumers must provide their name, date of birth, address, email, telephone number, and a password.  (Id. at ¶¶ 36-44, Exs. 28-38.)  Defendants interact with consumers via telephone and email during the enrollment process.  (Id. at ¶¶ 38-40, 42-43, Exs. 30-31, 35-36.)

---

[3]  Rewards include complimentary or reduced-rate rooms, free shows and dining, access to exclusive events and promotions, and invitations to giveaways, tournaments, and concerts at participating MGM Mirage properties, including the Monte Carlo Resort & Casino.  (Id. at Ex. 24-26.)

New York residents are invited to plan their trip on Defendants' Players Club page. (Id. at Exs. 32, 36.)

Defendants offer the capacity to purchase casino credit through the Monte Carlo Resort & Casino website through an online application for Marker Signing Privileges. (Id. at ¶¶ 53-56, Exs. 47-49.) The Marker Limit Application requires the applicant to provide his/her home and business addresses, date of birth, social security number, and bank account information. (Id. at Ex. 49.) Defendants provide the address, telephone number, and facsimile number of their Casino Credit Department for consumers with questions concerning Marker Signing Privileges. (Id. at Ex. 48.)

Moreover, New Yorkers can create a Monte Carlo Guestbook Account to receive offers and promotions from Defendants, including information about room rates, promotions, contests, and special events. (Id. at ¶¶ 22-23, Ex. 13; Declaration of Michael Levick, dated July 2, 2008 ("Levick Decl."), at ¶ 9, Ex. 8.) To create an account, consumers must provide their name, address, email, and date of birth. (Patterson Decl. at ¶¶ 24-30, Exs. 14-21; Levick Decl. at ¶ 9.) Consumers have the option to provide a telephone number as well. (Patterson Decl. at Ex. 14.) In addition to email, consumers can request to receive offers and promotions from Defendants via mail, telephone, and text message. (Id. at Ex. 17.) Defendants email New Yorkers with special offers to entice them to vacation at the Monte Carlo Resort & Casino. (Levick Decl. at ¶¶ 10-11, Exs. 9-10.)

Defendants' MGM Mirage website, located at <www.mgmmirage.com>, is equally as interactive as the Monte Carlo Resort & Casino website and provides equally direct access to the services provided under the infringing MONTE CARLO mark. As with the Monte Carlo Resort & Casino website, New Yorkers can book vacations (id. at ¶¶ 59- 74, Exs. 51-64), and join Defendants' Players Club through the MGM Mirage website (id. at ¶¶ 79-80, Ex. 26). Through Defendants' MGM Mirage website, consumers can register with MGM Mirage Vacations, so that they can

"receive weekly e-mails filled with hot deals and special promotions." (Id. at ¶¶ 75-76, Ex. 65.) To build a profile, consumers provide Defendants with their name, address, email address, and a password. (Id. at ¶¶ 77-78, Exs. 66-67.) While submission of a street address is optional, submission of a zip code is mandatory to create a profile. (Id. at Ex. 66.) Consumers can also access the Monte Carlo Resort & Casino website through the MGM Mirage website. (Id. at 86-88, Ex. 72.)

The MGM Mirage Affiliate Program enables New York consumers to promote the Monte Carlo Resort & Casino for profit. Both the Monte Carlo Resort & Casino and MGM Mirage websites provide links to the MGM Mirage Affiliate Program website, located at <www.mgmmirageaffiliates.com>. (Id. at ¶¶ 81-82, Exs. 1, 51, 68.) Affiliate members have "unlimited potential to earn high commissions" by promoting the Monte Carlo Resort & Casino through their website or newsletter using banners, text links, and other materials provided by Defendants. (Id. at Ex. 70.) Affiliates are paid a commission for each customer that makes a qualified booking with Defendants as a result of their marketing and promotional efforts. (Id. at Exs. 69-70.) Membership is free and applicants must provide their name, address, email, telephone number, and the MGM Mirage property they wish to promote. (Id. at Exs. 69-71.) Commission checks are mailed to affiliates at the address provided. (Id. at Ex. 71.) Consumers with questions about Defendants' Affiliate Program can email <affiliate@mgmmirage.com> or call Defendants' Affiliate Hotline at (702) 891-1793. (Id. at Ex. 70.)

## ARGUMENT

I.    DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION UNDER NEW YORK'S LONG-ARM STATUTE

A party is subject to personal jurisdiction in federal court if the party falls within the reach of the forum state's long-arm statute and if the exercise of jurisdiction comports with the constitutional requirements of due process. See, e.g., D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 104 (2d Cir.

2006).  At the early stages of a proceeding, where no evidentiary hearing has been held, a plaintiff

need only make a *prima facie* showing of jurisdiction.  Hsin Ten Enter. USA, Inc. v. Clark Enters.,

138 F. Supp. 2d 449, 451 (S.D.N.Y. 2000).  In determining whether a plaintiff has made such a

showing, the Court must construe the complaint and any affidavits in the light most favorable to the

plaintiff and resolve all doubts in the plaintiff's favor.  City of New York v. Cyco.Net, Inc., 383

F. Supp. 2d 526, 541 (S.D.N.Y. 2005); Mattel, Inc. v. Adventure Apparel, No. 00 Civ. 4085, 2001

WL 286728, at *2 (S.D.N.Y. Mar. 22, 2001).  While Defendants make much of their lack of a

physical presence in New York, they altogether fail to mention their significant contacts with New

York residents through their interactive websites.  Through these websites, Defendants transact

business with New Yorkers on a regular and substantial basis.

A.  Defendants Are Subject To Personal Jurisdiction Under CPLR § 302(a)(1).

Personal jurisdiction will be found under N.Y. CPLR § 302(a)(1) "where the defendant has

transacted business within the state, and the claim arises out of that activity."  Hsin Ten Enter., 138

F. Supp. 2d at 455.  "A single transaction can satisfy this provision, even where the defendant never

enters the state, so long as the claim arises from that transaction."  Id.; see also Citigroup Inc. v. City

Holding Co., 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000); Novak v. Overture Services, Inc., 309 F.

Supp. 2d 446, 454 (E.D.N.Y. 2004) ("Section 302(a)(1) is a single act statute and proof of one

transaction in New York is sufficient to invoke jurisdiction, even [if] the [defendant] never enters the

state, so long as the [defendant's] activities [in New York] were purposeful and there is a substantial

relationship between the transaction and the claim asserted.") (internal quotations omitted).

Courts have routinely held that companies maintaining interactive websites which facilitate

the exchange of information with New York consumers are subject to personal jurisdiction in New

York under § 302(a)(1).  As described in the "Facts" section above, both the Monte Carlo Resort &

Casino and the MGM Mirage websites are highly interactive, permitting New Yorkers to book and

pay for stays at the Monte Carlo Resort & Casino (Patterson Decl. at ¶¶ 12-20, 45-52, 59-74, Exs. 1-12, 39-46, 50-64, ); join Defendants' Players Club (id. at ¶¶ 31-44, 79-80, Exs. 22-38); purchase casino credit (id. at ¶¶ 53-56, Exs. 47-49); and obtain a variety of information (id. at ¶¶ 21-30, 75-78, Exs. 13-21, 65-67; Levick Decl. ¶¶ 9-11, Exs. 8-10). The websites also gather personal information about Defendants' New York consumers. (Patterson Decl. at ¶¶ 17, 20, 22-24, 26, 28, 30, 36, 41, 49, 64, 67, 77-78, Exs. 9, 12, 14, 19, 21, 28, 34, 43, 56, 59, 66-67.) Accordingly, Defendants are subject to personal jurisdiction in New York. See New Angle Pet Prods., Inc. v. MacWillie's Gold Prods., Inc., No. 06-CV-1171, 2007 WL 1871345, at *3 (E.D.N.Y. June 28, 2007); Brown v. Grand Hotel Eden, 214 F. Supp. 2d 335, 339 (S.D.N.Y. 2002); Obabueki v. Int'l Business Machines Corp., Nos. 99 Civ. 11262 & 99 Civ. 12486, 2001 WL 921172, at **3-4 (S.D.N.Y. Aug. 14, 2001) (interactive website providing information to consumers rises to level of transacting business under § 302(a)(1)); Mattel, 2001 WL 286728, at *3 (evidence of one sale through defendant's website sufficient to establish jurisdiction under § 302(a)(1)).

Defendants' operation of their interactive Monte Carlo Resort & Casino, MGM Mirage, and MGM Mirage Affiliate websites, all of which permit "significant and unqualifiedly commercial" interaction with New York residents, provides a sufficient basis for the exercise of personal jurisdiction under § 302(a)(1). Citigroup, Inc., 97 F. Supp. 2d at 565; see also Philip Morris USA Inc., 2007 WL 725412, *5 (personal jurisdiction exercised under § 302(a)(1) where defendants in trademark infringement action were misleading consumers with infringing activity on their interactive website).

B.    Defendants Are Subject To Personal Jurisdiction Under § 302(a)(3).

Defendants are also subject to personal jurisdiction pursuant to CPLR § 302(a)(3), which provides that the Court can exercise jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state . . . if he . . . (i) regularly does

or solicits business, or engages in any other persistent course of conduct . . . in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate . . . commerce." CPLR § 302(a)(3); <u>see also</u> <u>PDK Labs, Inc. v. Proactive Labs, Inc.</u>, 325 F. Supp. 2d 176, 179 (E.D.N.Y. 2004); <u>Citigroup</u>, 97 F. Supp. 2d at 568.

1.    <u>Defendants Have Committed Tortious Acts That Cause SBM Injury<br>Within New York.</u>

Defendants have caused injury to SBM within the State of New York because SBM's "actual and potential customers in New York are confused or deceived when they view and interact with [Defendants'] web sites." <u>Citigroup, Inc.</u>, 97 F. Supp. 2d at 568; <u>see also</u> <u>PDK Labs, Inc.</u>, 325 F. Supp. 2d at 181 ("[I]njury [to trademark owner] within the state includes harm and threatened harm in the New York market resulting from actual or potential confusion and deception of New York Internet users."); <u>Am. Network, Inc. v. Access Am./Connect Atlanta, Inc.</u>, 975 F. Supp. 494, 497 (S.D.N.Y. 1997) (same). New York residents interacting with Defendants' websites are likely to mistakenly believe that Defendants' use of the MONTE CARLO mark in connection with casino and resort services is sponsored, licensed, authorized by or affiliated, connected or otherwise associated with SBM. (Amended Complaint ("Am. Comp.") ¶¶ 33-39, 49-50, 55, 65.) SBM's presence in New York for more than twenty years leaves no doubt that the irreparable harm and reputational injury caused by Defendants' infringing activities will be most felt by SBM in New York. (Am. Comp. ¶¶ 19-20, 24-25.) Accordingly, Defendants are causing injury to SBM within the State of New York.

2.    <u>Defendants Are Subject To Personal Jurisdiction Under § 302(a)(3)(i).</u>

Defendants regularly do business with New Yorkers booking vacations at the Monte Carlo Resort & Casino through the Monte Carlo Resort & Casino and MGM Mirage websites. (Patterson Decl. at ¶¶ 12-20, 45-52, 59-74.) Defendants further do business with New York residents through

the MGM Mirage Affiliate website, which enables New York residents to enlist to promote and market the Monte Carlo Resort & Casino on Defendants' behalf for a commission. (Id. at ¶¶ 81-85, Exs. 68-71.) See Hollins v. U.S. Tennis Assoc., 469 F. Supp. 2d 67, 77 (E.D.N.Y. 2006) ("The amount of business that must be conducted to satisfy [the § 302(a)(3)(i)] standard is less than that which is required to satisfy the conventional doing business standard.") (internal citation omitted). Moreover, Defendants engage in a persistent course of promoting and marketing their Monte Carlo Resort & Casino to New Yorkers through their websites by allowing them to book stays (Patterson Decl. at ¶¶ 12-20, 45-52, 59-74), receive updates concerning offers and promotions (id. at ¶¶ 21-30, 75-78; Levick Decl. at ¶¶ 9-11, Exs. 8-10 ), join Defendants' affiliate program (Patterson Decl. at ¶¶ 81-85), enroll for Defendants' rewards programs (id. at ¶¶ 31-44, 79-80), and apply for casino credit (id. at ¶ 53-56). They are therefore subject to jurisdiction under § 302(a)(3)(i).

### 3.    Defendants Are Subject To Personal Jurisdiction Under § 302(a)(3)(ii).

Defendants reasonably should have expected that their infringing activities would have consequences in New York. As detailed above, Defendants collect addresses from consumers booking reservations at the Monte Carlo Resort & Casino, enrolling for Defendants' Players Club, Monte Carlo Guestbook Account, and MGM Mirage Vacations, and applying online for Marker Signing Privileges. By including La Guardia and JFK airports (and Newark, as a practical matter) in their list of departure cities for consumers booking trips to the Monte Carlo Resort & Casino on Defendants' websites, Defendants are undoubtedly attempting to attract New Yorkers to their casino. (Patterson Decl. at ¶¶ 14, 70, Exs. 3-4, 61.) Finally, Defendants collect and verify addresses for New Yorkers applying for the MGM Mirage Affiliate Program. (Id. at ¶¶ 81-85, Exs. 69-71.) Defendants therefore knowingly and purposefully interact with New Yorkers through their websites. Am. Network, Inc., 975 F. Supp. 494, 498 (S.D.N.Y. 1997) (reasonably foreseeable that defendant's

trademark infringement would have consequences within New York where website was designed to reach a New York market).

Defendants further reasonably should have foreseen the consequences of their actions in this forum based on SBM's long-standing presence here. Defendants were likely aware of SBM's New York operations at least as early as 2003—if not earlier—when SBM's New York activities were part of a published decision in a litigation involving the CASINO DE MONTE-CARLO mark. See Int'l Bancorp, LLC v. Société des Bains de Mer et du Cercle des Etrangers à Monaco, 329 F.3d 359, 364-65 (4th Cir. 2003) (discussing SBM's presence in New York and holding that SBM uses its mark in commerce in the United States) (aff'g Int'l Bancorp, LLC v. Société des Bains de Mer et du Cercle des Etrangers à Monaco, 192 F. Supp. 2d 467, 479-80 (E.D.Va. 2002)). Defendants were surely aware of the Int'l Bancorp litigation—concerning SBM's rights in the CASINO DE MONTE-CARLO mark in the United States—at the time. In addition to the publicity generated by SBM's New York operations for more than twenty years, Defendants were put on *actual* notice of SBM's New York office on February 10, 2005, when SBM opposed Victoria Partner's pending trademark application for the MONTE CARLO mark in the United States Patent & Trademark Office ("USPTO").[4] (Levick Decl., Exh. 4, at ¶ 3.)

---

[4] Defendants attempt to avoid this Court's jurisdiction by arguing that it is SBM's subsidiary, SBM USA, Inc.—not SBM—that operates a New York office. However, all of SBM USA's activities are conducted for the benefit and at the direction of SBM, the trademark owner. (Lambert Decl., at ¶¶ 2-3.) SBM is therefore suffering a cognizable injury to its goodwill and equity within New York, rendering jurisdiction under § 302(a)(3) applicable to Defendants. See Time Prods. v. J. Tiras Classic Handbags, Inc., No. 93 Civ. 7856, 1994 WL 363930, at **1, 7 (S.D.N.Y. July 13, 1994) (exercising jurisdiction under § 302(a)(3) where foreign plaintiff brought New York suit where the sales, advertising, and manufacturing of goods sold under foreign plaintiff's trademark occurred at its subsidiary's place of business in New York City).

Finally, Defendants undoubtedly derive substantial revenue from interstate commerce—a fact they do not dispute in their motion to dismiss. (Am. Comp. ¶¶ 31-35.) Accordingly, Defendants are subject to jurisdiction under § 302(a)(3)(ii).

C.    Exercising Jurisdiction Over Defendants Comports With Due Process.

This Court's exercise of personal jurisdiction over Defendants comports with due process. To establish the minimum contacts sufficient to justify specific jurisdiction, the plaintiff must establish (1) that its "claim arises out of or relates to [defendant's] contact with [the forum state]," and (2) "that [the defendant] 'purposefully availed' [himself] of the privilege of doing business in [the forum state] and that [the defendant] could foresee being 'haled into court' there." Chew v. Dietrich, 143 F.3d 24, 28 (2d Cir. 1998) (alterations in original).

As described in detail above, Defendants have purposefully availed themselves of the privilege of conducting business in New York through their interactive websites and reasonably should have anticipated being haled into court here. Pearson Ed., Inc. v. Shi, 525 F. Supp. 2d 551, 557-58 (S.D.N.Y. 2007) (defendants' sales to New Yorkers through their website confers jurisdiction); Alpha Int'l, Inc. v. T-Reproductions, Inc., No. 02 Civ. 9586, 2003 WL 21511957, at *5 (S.D.N.Y. Jul. 1, 2003); Hsin Ten Enter., 138 F. Supp. 2d at 457.

D.    Should The Court Find That SBM Has Failed To Make A *Prima Facie* Showing Of Jurisdiction, SBM Should Be Granted Jurisdictional Discovery.

The foregoing submissions set forth a *prima facie* case for jurisdiction in New York over Defendants. However, should the Court find that SBM has failed to meet its burden of establishing jurisdiction, SBM should be granted jurisdictional discovery on this issue. Filus v. Lot Polish Airlines, 907 F.2d 1328, 1332 (2d Cir. 1990); Porina v. Marward Shipping Co., Ltd., No. 05 Civ. 5261, 2006 WL 2465819, at *9 (S.D.N.Y. Aug. 24, 2006) ("plaintiff should be given ample opportunity to secure and present evidence relevant to the existence of jurisdiction through

jurisdictional discovery") (internal quotation omitted).  Granting jurisdictional discovery here would enable SBM to obtain evidence concerning the specific manner and extent to which Defendants market their services to, and transact business with, New York residents, thereby "filling any gaps" that may exist in its jurisdictional allegations.[5]

II.    VENUE IS PROPER

In cases of trademark infringement, "venue may be proper in each jurisdiction where infringement is properly alleged to have occurred." Mattel, Inc., 2001 WL 286728, at *4 (internal citation and quotation marks omitted).  "At a minimum, the defendant must have targeted its marketing and advertising efforts at the district in question, *or have actually sold its products there.*" Id. (internal citation omitted) (emphasis in original).  Because Defendants are subject to personal jurisdiction, venue is proper and Defendants' motion to dismiss for improper venue should be denied. GTFM v. Int'l Basic Source, Inc., No. 01 Civ. 6203, 2002 WL 31050840, at *5 (S.D.N.Y. Sept. 12, 2002).

III.    THIS ACTION IS NOT BARRED BY THE DOCTRINE OF LACHES

Defendants' motion to dismiss for laches must fail for a number of reasons, each of which alone is sufficient to defeat Defendants' laches arguments.  First, it is premature to consider a defense of laches—which necessarily involves a fact-intensive inquiry—on a pre-answer, pre-discovery motion to dismiss.  Second, laches is an equitable defense that is unavailable to a defendant who has engaged in inequitable conduct.  Third, laches is an affirmative defense that must be pleaded and proved by Defendants.  Defendants attempt to get around this by claiming that SBM has delayed for more than six years in bringing suit, creating a rebuttable presumption of laches.

---

[5]    As demonstrated by the limited discovery annexed to SBM's papers, such discovery would be targeted to Defendants' contacts with New York consumers and would not impose a burden on Defendants.  (Levick Decl., Ex. 7.)

Here, the presumption does not apply because the six-year "statute" was tolled while SBM was engaged in other litigation concerning its CASINO DE MONTE-CARLO mark and ended when it initiated proceedings against Defendant Victoria Partners before the Trademark Trial and Appeal Board ("TTAB"). But even if the presumption were to apply, laches fails on the merits because SBM's delay was excusable and because there was no cognizable prejudice to Defendants.

A.    Laches Is An Affirmative Defense And Therefore Premature At This Stage.

"The defense of laches is an affirmative defense, which is generally not appropriately raised in a motion to dismiss." Lennon v. Seaman, 63 F. Supp. 2d 428, 439 (S.D.N.Y. 1999); quoting Karlen v. New York Univ., 464 F. Supp. 704, 708 (S.D.N.Y. 1979) ("the defense of laches is an affirmative defense under Fed.R.Civ.P. 8(c) and properly should be raised in the defendant's answer and not upon a motion to dismiss."). In Lennon, where the plaintiff argued that the defendant had engaged in inequitable conduct—as SBM alleges here—the court held that "a ruling on the defendant's defense of laches would necessarily involve a fact-intensive analysis and balancing of equities that would require the Court to consider matters outside the pleadings that are in dispute." Id.; see also Fort Knox Music, Inc. v. Baptiste, 47 F. Supp. 2d 481, 484 n.1 (S.D.N.Y. 1999) (declining, in a declaratory judgment action for copyright infringement, to apply the doctrine of laches to a **forty-year** delay in commencing suit where there were factual questions concerning the reasons for the delay and prejudice to the non-moving party) (emphasis added).

B.    If The Court Considers Laches At This Stage, It Should Still Deny Defendants' Motion.

    1.    Because Laches Is An Equitable Defense, It Is Not Available To Defendants Because They Have Engaged In Inequitable Conduct.

In trademark actions, it is well-settled that the equitable defense of laches is not available to a defendant who has willfully or intentionally infringed on a plaintiff's mark. Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2nd Cir. 2000) (holding, in a case involving a **nineteen-**

**year delay**, that "intentional infringement is a dispositive, threshold inquiry that bars further consideration of the laches defense, not a mere factor to be weighed in balancing the equities") (citing Harlequin Enters. Ltd. v. Gulf & Western Corp., 644 F.2d 946, 950 (2d Cir. 1981)); Harley Davidson, Inc. v. Grottanelli, 164 F.3d 806, 813 (2d Cir. 1999) (upholding preclusion of laches defense in a case involving an **eighteen-year delay** because Defendant's "intention to confuse undermine[d] any claim of good faith"); Tri-Star Pictures, Inc. v. Unger, 14 F. Supp. 2d 339, 362 (S.D.N.Y. 1998) ("it is well known that a laches defense is unavailable where a defendant intentionally infringes on a plaintiff's mark"); Cuban Cigar Brands N.V. v. Upmann Int'l., Inc., 457 F. Supp. 1090, 1098 (S.D.N.Y. 1978) (rejecting laches defense, notwithstanding **delay of at least forty-five years**, because an infringer claiming laches "must be able to demonstrate the absence of any intent to confuse and deceive the public").

In this case, SBM has made numerous detailed allegations that Defendants willfully and intentionally copied SBM's world-famous CASINO DE MONTE-CARLO mark. (Am. Comp. at ¶¶ 1, 32-40, 52, 57, 62.) In its Amended Complaint, SBM explicitly alleges that Defendants' actions "*were taken in bad faith with full knowledge of Plaintiff's ownership of and exclusive rights in the MONTE CARLO mark, with the intent to deceive and mislead the public . . . .*" (Id. at ¶ 38 (emphasis added).) Elsewhere throughout the Amended Complaint, SBM alleges that Defendants have acted in bad faith. In the opening paragraph, SBM posits that "surely aware of the fame and endurance of the Casino de Monte-Carlo, *and undoubtedly because of that fame and endurance*, Defendants adopted 'Monte Carlo' as the name of their casino and hotel in the heart of the gaming industry in the United States, Las Vegas." (Id. at ¶ 1 (emphasis added).) SBM further sets forth various details concerning Defendants' willfully infringing acts, including Defendants' representations to the United States Patent and Trademark Office that it selected the name "Monte

Carlo" in order to invoke the image, in the minds of its consumers, of the real Casino de Monte-Carlo. (Id. at ¶ 31-37.) Finally, SBM alleges that Defendants' willful infringement is likely to cause consumer confusion. (Id. at ¶ 39.) Thus, Defendants' laches defense must be denied.

>      2.    Even If The Court Overlooks Defendants' Willfulness, Laches Fails On
>            The Merits.

>            (a)    The Six-Year Burden Shifting "Statute" Does Not Apply.

The Court should not shift the burden to SBM to disprove laches because SBM's "delay" is less than six years. Accepting Defendants' assertion that SBM knew of Defendants' infringing use of the MONTE CARLO mark as early as June 21, 1996, SBM ordinarily would have had until June 21, 2002 to bring suit without the presumption arising. (Brief at 17.) But in the trademark infringement context, the existence of other litigation excuses a trademark owner's delay. See Cuban Cigar Brands N.V., 457 F. Supp. 1090, 1098 n.28 ("a trademark owner is not bound to take on more than one infringer at a time"); see also Elec. Commc'ns., Inc. v. Elec. Components for Indus. Co., 443 F.2d 487, 491 (8th Cir. 1971) (holding that five-year delay did not count where plaintiff engaged in similar litigation against others); J. Thomas McCarthy, 6 McCarthy on Trademarks and Unfair Competition § 31:16 (4th ed. 2008) (hereinafter "McCarthy").

Thus, the six-year burden shifting "statute" was tolled on October 4, 2000, when SBM brought enforcement proceedings against International Bancorp before the World Intellectual Property Organization ("WIPO"), for its worldwide infringing use of SBM's CASINO DE MONTE-CARLO mark, including use in the United States, via the internet. (Levick Decl., Ex. 1, at p. 2.) After successfully defending its rights in the WIPO proceedings, SBM was immediately forced to continue litigating against International Bancorp in the United States, where it again firmly established its superior rights to its CASINO DE MONTE-CARLO mark in the United States. Int'l Bancorp, 192 F. Supp. 2d 467, aff'd Int'l Bancorp 329 F.3d 359. That litigation continued until

January 12, 2004, when the Supreme Court of the United States denied certiorari on International Bancorp's appeal. 540 U.S. 1106 (2004).

Having firmly established its United States trademark rights, SBM shortly thereafter took adverse action against Defendant Victoria Partners on November 8, 2004, when it filed for an extension of time to oppose Victoria Partners' application for a federal trademark registration for the MONTE CARLO mark before the TTAB. (Levick Decl., Ex. 3.) SBM then filed its Notice of Opposition against Victoria Partners' registration of the mark in the TTAB on February 15, 2005. (Levick Decl. Ex. 4.) In Fitzpatrick v. Sony-BMG Music Entm't, Inc., the court explicitly recognized that time spent litigating before the TTAB does not count as delay for purposes of laches. No. 07 Civ. 2933, 2007 WL 4358471, at *3 (citing 6 McCarthy § 31:16); see also Citibank, N.A. v. Citytrust, 644 F. Supp. 1011, 1014 (E.D.N.Y.1986) ("[T]he Court is inclined to find that the four years before this action was commenced, during which the opposition proceeding [in the TTAB] was being litigated, should not be considered a period of prejudicial delay in deciding whether plaintiffs have been guilty of laches.").

Thus, SBM's "delay" is only the time between June 21, 1996 (when Defendants claim to have begun using the MONTE CARLO mark) and October 4, 2000 (when SBM initiated WIPO proceedings against International Bancorp) plus the time between January 12, 2004 (when Int'l Bancorp was finally resolved) and November 8, 2004 (when SBM first took adverse action against Defendants), a period of approximately five years. Plaintiff's filing of the instant litigation, then, falls comfortably within the six-year burden-shifting period touted by Defendants.[6]

(b)    Even If The Court Shifts The Burden, Laches Fails On The Merits.

Even if this Court were to find that SBM delayed more than six years in taking action against Defendants, such a delay does not, *a fortiori*, establish laches. The six-year period is merely a device used by courts to shift the burden of proof to plaintiffs by creating a rebuttable presumption of laches. Fitzpatrick, 2007 WL 4358471, at *2 (citing 6 McCarthy § 31:23). The result is that "the burden [will be] on the [plaintiff] to aver and prove the circumstances making it inequitable to apply laches to his case." Id. (internal citations omitted). Thus, Defendants' argument that "the Court should dismiss this action with prejudice *because* it is clear from the face of the Amended Complaint that the applicable six-year limitations period for filing suit has expired" cuts out the entire merits-based inquiry and would transform a mere burden-shifting device into a complete bar to relief. (Brief at 16 (emphasis added).)

A defendant asserting laches must establish that: (1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay. See id. If the burden shifts, it is up to the plaintiff to disprove *any one* of the elements above. See Harley-Davidson, Inc. v. O'Connell, 13 F. Supp. 2d 271, 279 (N.D.N.Y. 1998) (citing A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1038 (Fed. Cir. 1992)). Defendants brief is entirely devoid of any mention of either inexcusable delay or prejudice, except for the one-sentence conclusory statement that "[b]ecause SBM will not be able to demonstrate that its delay was excusable or that Victoria Partners has not been prejudiced by SBM's 12-year delay, the Court should dismiss this action with prejudice." (Brief at 18.) In this case, any

---

[6] Even if the Court counts only time spent litigating in the United States, SBM's total "delay" would be approximately 5.5 years, as the Eastern District of Virginia lawsuit was filed on January 24, 2001. (Levick Decl., Ex. 2, at p. 5.)

delay by SBM in bringing this lawsuit is excusable and there is no demonstrable evidence that Defendants suffered any prejudice.

**Delay.**  It is not a controversial point of trademark law that a trademark owner is entitled to wait to enforce its rights until those rights are clearly entitled to protection.  6 McCarthy § 31:19; ProFitness Physical Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy P.C., 314 F.3d 62, 68 (2d Cir. 2002) (a trademark owner has no obligation to sue until "his right to protection has clearly ripened") (internal citations omitted).  As discussed in Section III.B.2(i), supra, from 2000 through 2004, SBM was engaged in litigation before WIPO and in the United States establishing its worldwide and United States-based rights in the MONTE CARLO mark.  Once SBM established its unequivocal rights in the United States, it moved swiftly to take action against defendant Victoria Partners.

Also, the following events, which have occurred only over the last four years, provide further justification for the timing of SBM's lawsuit:

- Defendant Victoria Partners applied for a federal trademark registration for the MONTE CARLO mark for casino services, which registration would necessarily undermine SBM's senior rights in the mark.  (Am. Comp. ¶ 2.)

- Defendant Victoria Partners opposed SBM's application for a federal trademark registration for the mark MONTE-CARLO BAY HOTEL & RESORT, even though SBM has superior rights to the mark.  (Id. ¶¶ 2, 41.)

- Defendant Victoria Partners threatened further lawsuits against SBM for its use of marks encompassing the term MONTE CARLO, even though SBM has superior rights to the mark.  (Id. ¶¶ 2, 42, 43.)

- Tarnishment of SBM's high caliber  MONTE CARLO mark has increased, highlighted by the recent fire in Defendants' Monte Carlo Resort & Casino in which the "MONTE CARLO" sign atop Defendants' resort was shown burning on national television.  (Id. ¶¶ 3, 44-46.)

Therefore, because SBM has now established rights to its MONTE CARLO brand in litigation through the Supreme Court of the United States, and because Defendants now clearly

purport to own rights in the term MONTE CARLO that are superior to SBM's rights and have recently tarnished the mark, SBM is entitled to enforce its rights in this case.

*Prejudice.*  While SBM admits that it made few, if any, allegations as to lack of prejudice caused to Defendants as a result of any delay by SBM in bringing suit, such allegations would be premature and immaterial in a Complaint.  It would have been illogical for SBM to plead the non-existence of an element of an affirmative defense that had not yet been raised, particularly where the relevant facts are entirely within Defendants' possession.  SBM did plead, however, that Defendants' infringement was willful.  Defendants' knowledge that they were infringing on SBM's mark should have put them on notice that they might be sued, and thus defeats any claim of prejudice.  See e.g, Nat'l Football League v. Coors Brewing Co., 205 F.3d 1324, 1999 WL 1254122, *1, (2d Cir. 1999) (unpublished op.)

Furthermore, "the defense of laches requires more by way of showing prejudice than the simple fact that the business continued during the period of delay." Cuban Cigar Brands N.V., 457 F. Supp. at 1098.  There is no reason to believe that Defendants, as a result of any delay by SBM, have done anything more than continue to operate their business.

IV.    DEFENDANTS' MOTION TO DISMISS MGM MIRAGE UNDER RULE 12(B)(6) SHOULD BE DENIED

In reviewing a complaint for dismissal under Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor.  Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995).  The complaint should be dismissed only where it appears beyond doubt that plaintiff can present no set of facts entitling it to relief.  Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir.1984).

Defendants contend that SBM fails to meet this Rule 12(b)(6) standard with respect to MGM Mirage because SBM's Amended Complaint does not distinguish which actions are attributable to MGM Mirage and which actions are attributable to Victoria Partners. This argument borders on the nonsensical: the allegations set forth in SBM's Amended Complaint are directed at *both* MGM Mirage and Victoria Partners—the Defendants here.[7] (See Am. Comp.) It is plain from the face of the Amended Complaint that SBM is alleging that Defendants are joint wrongdoers and, as such, should be held jointly and severally liable for their infringing activities.[8] As set forth in SBM's Amended Complaint and in detail above, both Defendants actively promote and market the Monte Carlo Resort & Casino to consumers, including New Yorkers. Thus, Defendants' motion to dismiss pursuant to Rule 12(b)(6) should be denied.

V.    THE COURT SHOULD NOT TRANSFER THIS ACTION TO THE DISTRICT OF NEVADA

"'[A] plaintiff's choice of forum is presumptively entitled to substantial deference,' and 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" Panterra Engineered Plastics, Inc. v. Transp. SYS. Solutions, LLC, 455 F. Supp. 2d 104, 114 (D.Conn. 2006) (quoting Gross v. BBC, 386 F.3d 224, 230 (2d Cir. 2004)); see also Orb

---

[7] Defendants' reliance on Appalachian Enters. v. ePayment Solutions Ltd., No. 01 CV 11502, 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) for the proposition that SBM is required to attribute specific conduct to MGM Mirage in order to survive a Rule 12(b)(6) motion to dismiss is misplaced. In that case, the plaintiff failed to establish any relationship between the seventeen defendants or identify any particular defendant that committed an act of wrongdoing, instead attributing all wrongful acts to all seventeen defendants collectively. Id. at *6. Moreover, the Appalachian Enters. defendants moved to dismiss for failure to comply with Rule 8(a)(2), the notice pleading standard, and pursuant to Rule 12(b)(6) for noncompliance with Rule 9(b), requiring that fraud be plead with particularity. Id. at **6, 8. Appalachian Enters. is plainly inapplicable here.

[8] Contrary to Defendants' assertion, SBM is not attempting to hold MGM Mirage accountable for the activities of its subsidiary, which would require a piercing of the corporate veil. (Brief at 19.) Rather, SBM has alleged that MGM Mirage's own activities, as well as the activities of its subsidiary, constitute trademark infringement. (See Am. Comp. generally.)

Factory, Ltd. v. Design Science Toys, Ltd., 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998) ("[A] court should not disturb a plaintiff's choice of forum unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice.") (internal quotations omitted).

In evaluating a motion to transfer under 28 U.S.C. § 1404(a), courts are to weigh the following factors: "(1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." Citigroup Inc., 97 F. Supp. 2d at 560-61. The moving party "bears the burden of clearly establishing that these factors favor transfer." Id. at 561 (internal citation omitted). Because Defendants have not made the strong showing that the District of Nevada is a more convenient forum than the Southern District of New York, this Court should retain jurisdiction.

A.    Convenience Of The Witnesses

"The convenience of both party and non-party witnesses is a key factor in a 1404(a) analysis." Dealtime.com v. McNulty, 123 F. Supp. 2d 750, 755 (S.D.N.Y. 2000). "A party seeking to rely on this factor *must identify the material witnesses and supply a general description of what their testimony will cover*." Id. (emphasis added). While Defendants identify thirteen supposed potential witnesses for whom Nevada may be more convenient, they neglect to provide any information about these individuals' purported areas of testimony. Thus, the convenience (or inconvenience) to these potential witnesses may not be given any weight. See id.; see also Orb Factory, 6 F. Supp. 2d at 208-09 ("Vague generalizations and failure to clearly specify the key witnesses to be called, along with a statement concerning the nature of their testimony, are an insufficient basis upon which to grant a change of venue under § 1404(a).").

Furthermore, Defendants' argument leaves out the second half of the equation—SBM's Monaco and New York-based witnesses, for whom New York is considerably more convenient than Nevada.[9] SBM expects that it would call the following Monaco and New York-based witnesses, among several others, to testify about the history of SBM and its renowned Casino de Monte-Carlo, the adoption of the CASINO DE MONTE-CARLO mark, advertising and use of the mark in commerce in the United Sates, sales to United States residents in the United States and abroad, and confusion among consumers, among other topics: Bernard Lambert, SBM's Director General, Axel Hoppenot, SBM's Marketing Director, and Cathleen Williams, SBM USA's Director of Group Sales and head of the New York office. (Lambert Decl., at ¶¶ 4-6.)

A 1404(a) motion is not meant to be a tool to shift an inconvenience from one party to another, which is precisely what would happen in this case. See Panterra, 455 F. Supp. 2d at 115 ("in a motion to transfer, a court does not seek merely to transfer inconvenience from one party to the other") (internal citations omitted). Because Defendants neglected to provide an overview of the areas in which their witnesses would testify, and because SBM's own witnesses would be inconvenienced by a transfer to Nevada, this factor weighs in favor of retaining jurisdiction.

B.    The Location Of Relevant Documents And The Relative Ease Of Access To Sources Of Proof

Defendants acknowledge that the location of relevant documents "is of little consequence one way or the other," and SBM agrees. (Brief at 25.) Defendants also argue, however, that they will

---

[9] A search for round-trip flights between Paris, France and Las Vegas, Nevada, for the dates August 2, 2008 and August 9, 2008, using the internet search engine located at <http://www.kayak.com> did not yield a single direct or non-stop flight. The minimum travel time for such a flight was over 14.5 hours for the Paris-Las Vegas flight and 12.5 hours for the Las Vegas-Paris flight. In contrast, a search for round-trip flights between Paris and New York, for the same dates, yielded sixty nonstop flights, with a minimum travel time of less than eight hours each way. (Levick Decl., Exs. 5 and 6.)

want the jury to be able to personally visit the Monte Carlo Resort & Casino in order to view the "subtle visual esthetic touches" that SBM alleges are part and parcel of Defendants' imitation of SBM's brand.  (Brief at 26.)[10]  A view of Defendants' resort is relevant only insofar as the jury would be able to compare the architectural and design details it examines to those of SBM's Casino de Monte-Carlo.  However, there is no venue anywhere in the United States that would lend itself to a visit to the Casino de Monte-Carlo.  A personal visit by the jury to Defendants' resort, without a similar trip to the Casino de Monte-Carlo, would be highly prejudicial; SBM would fight vigorously, and likely successfully, to exclude such evidence under Rule 403 of the Federal Rules of Evidence.

Furthermore, Defendants fail to explain why videos or photographs of both premises would not be a suitable substitute for a personal visit.[11]  Finally, a visit to the resort is not necessary to prove or disprove SBM's allegations concerning the design elements of the resort, as SBM identified and described those design elements almost *verbatim* from Defendant Victoria Partners' *own admissions* to the United States Patent and Trademark Office ("USPTO").  (Amended Comp., Ex. E, at pp. 3-4.)

This factor is at worst neutral and at best weighs against transfer, due to the prejudice associated with a single-site visit.

---

[10] Defendants cite only three cases in support of the proposition that "[t]he possibility of a view of the premises, if such a view is appropriate to the action, is a factor to be considered in deciding a motion to transfer venue."  (Brief at 26.)  None of these cases involve trademark infringement, and thus they do not support the notion that a view of the premises is appropriate in this trademark infringement case.  While the design of the Defendants' resort is valuable evidence of Defendants' intent and willfulness in infringing on SBM's mark, the actual infringement itself comes from Defendants' very operation of the Monte Carlo Resort & Casino and the sales and marketing of goods and services under the MONTE CARLO mark.  Thus, a visit of the resort is entirely unnecessary.

[11] Although if they are inadequate substitutes, then a personal visit of one site and a mere photographic or videographic examination of the other would plainly be prejudicial.

C.     Convenience Of The Parties

Defendants contend that Nevada is more convenient to the parties because Defendants'
witnesses and documents are located there and because Nevada is no less convenient to SBM than is
New York.  However, convenience of the witnesses and location of relevant documents are separate
factors, both of which are discussed above and neither of which favor transfer.[12]

In any case, for the same reasons that New York is considerably more convenient to SBM's
witnesses than is Nevada, New York is considerably more convenient to SBM's principals than is
Nevada.  (See Section V.A, supra.)  Again, because a motion to transfer is not a device to shift
inconvenience, any burden on Defendants' principals from litigating in New York does not warrant a
change of forum.  See Panterra, 455 F. Supp. 2d at 115.

Straining to support their transfer argument, Defendants argue that Nevada is *more*
convenient to SBM than is New York, because SBM has "substantial ties to Nevada" through its
ownership of a nominal percentage of the common stock of Wynn Resorts, located in Las Vegas,
and through its marketing alliance with Wynn Resorts.  (Brief at 21.)  This argument is not
creditable.  In Citigroup, the court held that the mere fact that plaintiff maintained branches in the
proposed alternate forum did not "temper[] the inconvenience to [plaintiff] of litigating in that forum
or make[] it somehow more fair to require [plaintiff] to litigate there." 97 F. Supp. 2d at 563.  Here,
SBM's alleged connection to Nevada is more tenuous and less compelling than the connection in
Citigroup, where the court denied the defendant's motion to transfer.  Neither SBM's nominal
ownership of shares of Wynn Resorts nor its marketing alliance with Wynn Resorts is an issue in

---

[12] Defendants' argument concerning the location of its documents is perplexing given their
admission that "the location of relevant documents is of little consequence one way or the other."
(Brief at 24, 25.)  The location of Defendants' documents does not favor transfer.  Regardless of
where this case is tried, Defendants will have to gather, review, copy, and produce their documents
to counsel for SBM in New York.

this litigation.  SBM does not maintain any offices, employees, documents, or any other information in Nevada.  (Lambert Decl., at ¶ 7.)

While arguing that SBM's minor interest in a non-party that happens to be located in Las Vegas creates "substantial ties to Nevada," Defendants simultaneously and hypocritically maintain that SBM has "only minimal and indirect ties" to New York, notwithstanding that its United States-based operations are centered here.  Defendants suggest that SBM only "claims to have an office in New York City," but in reality does not, simply because the office is operated by a different corporate entity—SBM's wholly-owned subsidiary, SBM USA.  (Brief at 20-21; Lambert Decl., at ¶ 3.)  SBM USA maintains SBM's sole United States office at 565 Fifth Avenue in New York City, is funded entirely by SBM, and its employees report directly to SBM's officers.  (Lambert Decl. at ¶ 2-3.)  In short, SBM USA exists solely to carry out business on behalf of SBM in the United States.  (Id. at ¶ 3.)

Because New York is more convenient to SBM than is Nevada, and because deference must be given to a plaintiff's choice of forum, this factor weighs in favor of retaining jurisdiction.

D.    The Locus Of Operative Facts

The fact that Defendants' resort is located in Nevada does not mean that Nevada is the locus of the operative facts.  As the court explained in Citigroup: "there is no dominant center of gravity" for a likelihood of confusion claim.  97 F. Supp. 2d at 562.  Defendants' nationwide customer base and its nationwide infringing solicitations—including solicitations directed at New York residents—mirrors the facts of Citigroup, where transfer was refused. Id.  Indeed, the vast majority of the confusion that exists among Defendants' consumers likely exists outside of Nevada.

This case involves other issues that also have no connection with Nevada.  For example, SBM will be required to demonstrate that its use of the MONTE CARLO brand in

the United States predates Defendants' use. As such, there is no single locus of operative facts. See id. at 563. If one had to be identified, it would be New York, where much of SBM's sales and marketing activities emanate and in which injury has been sustained to SBM and to New York residents. Accordingly, this factor weighs against transfer to Nevada.

      E.      <u>Availability Of Process</u>

"The unavailability of process over third-party witnesses does not compel transfer when the practical alternative of offering videotaped or deposition testimony of a given witness exists." <u>Id.</u> at 561 (citing <u>Dwyer v. General Motors Corp.</u>, 853 F. Supp. 690, 694 (S.D.N.Y. 1994)). Thus, the fact that several of Defendants' non-party witnesses who may be called to testify at trial are located in Nevada, not New York, is in no way dispositive of the transfer issue.

Furthermore, "[t]he force of this factor is also diminished somewhat [where Defendant] has not shown, or even suggested, that [potential third-party witnesses] would be unwilling to testify in a New York court without the prodding of a subpoena." <u>Id.</u> at 562; <u>see also</u> <u>Carruthers v. Amtrak</u>, No. 95 Civ. 0369, 1995 WL 378544, at *3 (S.D.N.Y. June 26, 1995). Defendants have made no showing that any potential third-party witnesses could not or would not appear for trial in New York. Thus, this factor weighs against transfer.

      F.      <u>Relative Means Of The Parties</u>

Defendants concede that because "all parties are large corporate entities presumably with substantial resources," this factor is neutral. (Brief at 26.) SBM agrees.

G.    The Forum's Familiarity With The Governing Law

Defendants argue that this factor is neutral.  While SBM agrees, it is also worth noting that this case involves questions of New York law, which this Court is presumably more familiar with than would be a court located within the District of Nevada.

H.    The Weight Accorded To The Plaintiff's Chosen Forum

As discussed in Section V, supra, SBM's choice of New York is entitled to substantial deference. See Gross, 386 F.3d at 230; Citigroup, 97 F. Supp. 2d at 561.  SBM's United States presence is based in New York, and its claims of superior rights in the CASINO DE MONTE-CARLO mark, consumer confusion, and dilution are nationwide in effect, including in New York.  This factor weighs heavily in favor of retaining jurisdiction.

I.    Trial Efficiency And The Interests Of Justice

Defendants present no independent argument that this factor supports transfer , and instead simply conflate it with the previous eight factors.  This factor is not meant to duplicate the other elements.  Rather, it requires courts to consider "the practical problems that would make the trial of a case easy, expeditious and inexpensive." Dwyer, 853 F. Supp. at 694 (internal citation omitted).  Defendants have not claimed that trying this case in the Southern District of New York would be inefficient or unjust.  Thus, this factor is neutral.

## CONCLUSION

For the reasons set forth above, SBM respectfully requests that the Court deny all

relief sought by Defendants.

DATED:    New York, New York
          July 3, 2008

                              QUINN EMANUEL URQUHART OLIVER &
                              HEDGES, LLP


                         By: _____
                              Robert L. Raskopf
                              robertraskopf@quinnemanuel.com
                              Claudia T. Bogdanos
                              claudiabogdanos@quinnemanuel.com
                              Jonathan A. Scharf
                              jonathanscharf@quinnemaneul.com

                              51 Madison Avenue, 22nd Floor
                              New York, New York  10010
                              Tel:  (212) 849-7000
                              Fax:  (212) 849-7100

                              ATTORNEYS FOR SOCIETE DES BAINS DE
                              MER ET DU CERCLE DES ETRANGERS A
                              MONACO

                              *Of Counsel*:

                              QUINN EMANUEL URQUHART OLIVER
                              & HEDGES, LLP
                              George R. Hedges
                              865 S. Figueroa Street, 10th Floor
                              Los Angeles, California 90017
                              Tel:  (213) 443-3000
                              Fax:  (213) 443-3100