**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SOCIETE DES BAINS DE MER ET DU
CERCLE DES ETRANGERS A MONACO,

                Plaintiff,

vs.

MGM MIRAGE and VICTORIA PARTNERS,

                Defendants.

ECF Case

Case No. 08-CV-03157

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS, OR, IN THE ALTERNATIVE,**
**TO TRANSFER THIS CASE TO THE DISTRICT OF NEVADA**

Jonathan E. Moskin (JM-9814)
E. Michelle Dean (ED-0104)
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 819-8200

Michael J. McCue (admitted *pro hac vice*)
Jonathan W. Fountain (admitted *pro hac vice*)
LEWIS AND ROCA LLP
3993 Howard Hughes Pkwy., Suite 600
Las Vegas, NV 89169
(702) 949-8200

# TABLE OF CONTENTS

I.      SBM HAS FAILED TO MEET ITS BURDEN OF PROVING PERSONAL
        JURISDICTION OVER THE DEFENDANTS ................................................................ 1

        A.      There Is No Basis For Exercising Specific Personal Jurisdiction Under
                CPLR § 302(a)(1) .......................................................................................... 1

        B.      There is No Basis for Exercising Specific Personal Jurisdiction Under
                CPLR § 302(a)(3) Because SBM Has Not Suffered Injury in New York ............. 3

        C.      The Exercise of Personal Jurisdiction Does Not Comport with Due
                Process ........................................................................................................... 6

        D.      The Court Should Deny SBM's Request for Jurisdictional Discovery ................. 6

II.     THE COURT SHOULD DISMISS THIS CASE BASED ON LACHES ........................ 7

        A.      Defendants Did Not Engage in Inequitable Conduct ............................................. 7

        B.      SBM's 11-Year Delay Is Not Excusable ............................................................. 8

        C.      Even If The Burden Shifting Statute Does Not Apply, Defendants' Laches
                Defense Succeeds On The Merits .................................................................... 11

III.    THE COURT SHOULD DISMISS THE CLAIMS AGAINST MGM MIRAGE ........... 12

IV.     IF THE COURT DOES NOT DISMISS THIS CASE IT SHOULD TRANSFER
        IT TO THE DISTRICT OF NEVADA ...................................................................... 12

        A.      Convenience of the Witnesses ......................................................................... 13

        B.      The Location of Documents and the Ease of Access to Sources of Proof .......... 13

        C.      Convenience of the Parties .............................................................................. 14

        D.      The Locus of Operative Facts ......................................................................... 14

        E.      Availability of Process .................................................................................... 15

V.      CONCLUSION .................................................................................................... 12

## TABLE OF AUTHORITIES

### FEDERAL CASES

*A.C. Aukerman Corp. v. R.L. Chaides Constr. Co.*,
    960 F.2d 1020 (Fed. Cir. 1992) ................................................................................. 8

*Arrow Electronics Inc. v. Ducommun Inc.*,
    724 F. Supp. 264 (S.D.N.Y. 1989) ........................................................................ 13

*Bensusan Rest. Corp. v. King*,
    937 F. Supp. 295 (S.D.N.Y. 1996) ..................................................................... 5, 6

*Bensusan Rest. Corp. v. King*,
    126 F.3d 25 (2d Cir. 1997) ...................................................................................... 5

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007) ............................................................................... 2, 3

*Burns v. Cook*,
    458 F. Supp. 2d 29 (N.D.N.Y 2006) ..................................................................... 12

*Buti v. Impressa Perosa, S.R.L.*,
    139 F.3d 98 (2d Cir. 1998) ...................................................................................... 8

*Chandon Champagne v. San Marino Wine Corp.*,
    335 F.2d 531 (2d Cir. 1964) ................................................................................. 11

*Citybank, N.A. v. Citytrust*,
    644 F. Supp. 1011 (E.D.N.Y. 1986) ...................................................................... 9

*Conopco, Inc. v. Campbell Soup Co.*,
    95 F.3d 187 (2d Cir. 1996) ................................................................................... 11

*Cuban Cigar Brands, N.V. v. Upmann Int'l, Inc.*,
    457 F. Supp. 1090 (S.D.N.Y. 1978) ...................................................................... 8

*In re Eastern Dist. Repetitive Stress Injury Litig.*,
    850 F. Supp. 188 (E.D.N.Y. 1994) ...................................................................... 15

*Fitzpatrick v. Sony-BMG Music Entm't, Inc.*,
    No. 07 Civ. 2933 (SAS), 2008 U.S. Dist. LEXIS 1164 (S.D.N.Y., Jan. 8, 2008) .................. 9

*Fort Knox Music Inc. v. Baptiste*,
    203 F.3d 193 (2d Cir. 2000) .................................................................................... 1

*Gap, Inc. v. Stone Int'l Trading, Inc.*,

No. 93 Civ. 0638 (SWK), 1994 U.S. Dist. LEXIS 16999 (S.D.N.Y. 1994)............................ 3

*Gauvin v. Trombatore*,
    682 F. Supp. 1067 (N.D. Cal. 1988) ................................................................. 12

*Harley-Davidson, Inc. v. Grottanelli*,
    164 F.3d 806 (2d Cir. 1998) ............................................................................. 8

*Haviland & Co. v. Johann Haviland China Corp.*,
    269 F. Supp. 928 (S.D.N.Y. 1967) ................................................................. 11

*Hearst Corp. v. Goldberger*,
    No. 96 Civ. 3620 (PKL), 1997 U.S. Dist. LEXIS 2065 (S.D.N.Y. Feb. 26, 1997)................ 4

*Hermes Int'l v. Lederer de Paris Fifth Avenue*,
    219 F.3d 104 (2d Cir. 2000)............................................................................. 8

*Hotel Corp. v. Seaman Corp.*,
    833 F.2d 1570 (Fed. Cir. 1987), *overruled in part by* ........................................... 8

*Hy Cite Corporation v. Badbusinessbureau.com, LLC*,
    297 F. Supp. 2d 1154 (W.D. Wisc. 2004).......................................................... 2

*ISI Brands v. KCC Int'l*,
    458 F. Supp. 2d 81 (E.D.N.Y. 2006) ............................................................... 2

*Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*,
    419 F. Supp. 2d 395 (S.D.N.Y. 2005) ............................................................ 13

*Int'l Bancorp, LLC v. SBM*,
    192 F. Supp. 2d 467 (E.D. Va. 2002) ............................................................... 9

*Ivoclar Vivadent, Inc. v. Ultident, Inc.*,
    No. 04-CV-0984E (Sc), 2005 U.S. Dist. LEXIS 20382 (W.D.N.Y. June 15, 2005) ............... 7

*Jazini by Jazini v. Nissan Motor Co.*,
    148 F.3d 181 (2d Cir. 1998).............................................................................. 6

*Jones v. Ceramco, Inc.*,
    387 F. Supp. 940 (E.D.N.Y. 1975) ................................................................... 9

*Keramchemie GMbH v. Keramchemie (Canada) Ltd.*,
    771 F. Supp. 618 (S.D.N.Y. 1991) ............................................................... 3, 4

*Knight-McConnell v. Cummins*,
    No. 03 Civ. 5035 (NRB), 2005 U.S. Dist. LEXIS 11577 (S.D.N.Y. June 10, 2005)............... 2

*Lennon v. Seaman*,
   63 F. Supp. 2d 428 (2d Cir. 1999) ............................................................................. 7

*McGraw-Hill Cos. v. Ingenium Techs. Corp.*,
   375 F. Supp. 2d 252 (S.D.N.Y. 2005) .................................................................. 3, 4

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996) ........................................................................................ 6

*Overseas Media, Inc. v. Skvortsov*,
   407 F. Supp. 2d 563 (S.D.N.Y. 2005) ....................................................................... 3

*Perry v. Boston Capital Ventures*,
   No. 01-CV-6186 (CJS), 2001 U.S. Dist. LEXIS 18789 (W.D.N.Y. Oct. 30, 2001) ............... 5

*ProFitness Physical Therapy Center v. Pro-Fit Orthopedic & Sports Physical Therapy*,
   314 F.3d 62 (2d Cir. 2002) ...................................................................................... 10

*Rescuecom Corp. v. Hyams*,
   477 F. Supp. 2d 522 (N.D.N.Y. 2006) ....................................................................... 2

*Richtone Design Group, L.L.C. v. Classical Pilates, Inc.*,
   No. 06 Civ. 0547 (NRB), 2006 U.S. Dist. LEXIS 64370 (S.D.N.Y. Aug. 21, 2006) ............. 4

*Saratoga Vichy Spring Co., Inc. v. Lehman*,
   625 F.2d 1037 (2d Cir. 1980) .................................................................................... 7

*Schick Mfg., Inc. v. Gillette Co.*,
   372 F. Supp. 2d 273 (D. Conn. 2005) ....................................................................... 9

*Seldon v. Direct Response Techs.*,
   No. 03 Civ. 5381, 2004 U.S. Dist. LEXIS 5344 (S.D.N.Y. Mar. 31, 2004) .......................... 2

*Shin Won Corp. v. LaSalle Nat'l Bank*,
   No. 01 Civ. 3580 (RCC), 2002 U.S. Dist. LEXIS 4503 (S.D.N.Y. March 19, 2002) ....... 13, 14

*Solow Building Co. v. Nine West Group*,
   No. 00 CIV 7685, 2001 U.S. Dist. LEXIS 8848 (S.D.N.Y. 2001) ................................. 7, 10

*Tandy Corp. v. Malone & Hyde, Inc.*,
   581 F. Supp. 1124 (M.D. Tenn. 1984) ....................................................................... 8

*Telebyte, Inc. v. Kendaco, Inc.*,
   105 F. Supp. 2d 131 (E.D.N.Y. 2000) ....................................................................... 5

*Tri-Star Pictures Inc. v. Unger*,
   14 F. Supp. 2d 339 (S.D.N.Y. 1998) ......................................................................... 8

**OTHER CASES**

*Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*,
   7 N.Y.3d 65, 850 N.E.2d 1140, 818 N.Y.S.2d 164 (2006)........................................ 1

*Societe des Bains de Mer et du Cercle des Etrangers a Monaco v. I. Bancorp Europe et
   al.*, WIPO Case No. D2000-1323 (Jan. 8, 2001)................................................ 9

**FEDERAL STATUTES**

Fed. R. Evid. 403................................................................................. 13

**STATE STATUTES**

N.Y. C.P.L.R. § 302(a)(3)(i).................................................................... 4

N.Y. C.P.L.R. § 302(a)(3)(ii)................................................................... 5

Defendants MGM MIRAGE and Victoria Partners respectfully submit this reply in support of their motion to dismiss based on lack of personal jurisdiction, improper venue, and laches and, in the alternative, their motion to transfer venue to the District of Nevada.  As set forth below, Plaintiff Société des Bains de Mer et du Cercle des Etrangers à Monaco ("SBM") has failed to meet its burden of proving that the Court has personal jurisdiction over the Defendants and has failed to meet its burden of proving that laches does not bar its 11-year delay in filing suit.  If the Court does not dismiss this action, the Court should transfer the action to the District of Nevada for the convenience of the non-party witnesses and where the jury can view the allegedly infringing Monte Carlo Resort & Casino.

## I.    SBM HAS FAILED TO MEET ITS BURDEN OF PROVING PERSONAL JURISDICTION OVER THE DEFENDANTS

### A.    There Is No Basis For Exercising Specific Personal Jurisdiction Under CPLR § 302(a)(1)

To establish personal jurisdiction under Section 302(a)(1), SBM must establish that Defendants transact business in New York (including the requirement of having purposefully availed themselves of the privilege of conducting activities in New York) and that SBM's claims arise out of such activities.  *See Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71, 850 N.E.2d 1140, 1142, 818 N.Y.S.2d 164, 166 (2006); *Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000).  SBM presents substantial evidence regarding an uncontested fact: the Defendants operate interactive web sites that allow New York residents to book hotel rooms, join a "players club," apply for casino credit, and engage in other activities.  (*See* Plaintiff's Opposition to Defendants' Motion to Dismiss, or, in the Alternative, to Transfer This Case to the District of Nevada ("Pltf.'s Opp.") at 2-6.)  However, the Defendants' operation of interactive websites is insufficient to establish jurisdiction over them, because they have not purposefully availed themselves of the privilege of conducting activities in New York.

In a controlling case that SBM ignores, the Second Circuit held that website interactivity is nothing more than an analytical tool for determining whether a defendant has "purposefully availed" itself of the privilege of conducting activities in the forum; it is not an independent legal

framework for establishing personal jurisdiction. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007). In *Hy Cite Corporation v. Badbusinessbureau.com, LLC*, 297 F. Supp. 2d 1154 (W.D. Wisc. 2004), cited with approval by the Second Circuit in *Best Van Lines*, the district court explained that "an 'interactive' or commercial website may not be sufficient to support jurisdiction if it is not aimed at residents in the forum state." *Id.* at 1159-1161 (citations omitted) (emphasis added). The court concluded that: "**a finding that a defendant uses its website to engage in repeated commercial transactions may support the exercise of personal jurisdiction, so long as there is a corresponding finding that the defendant is expressly targeting residents of the forum state and not just making itself accessible to everyone regardless of location**." *Id.* at 1161 (emphasis added).

Applying these principles, the Second Circuit has refused to exercise jurisdiction over a defendant has not purposefully availed itself of the privilege of conducting activities in New York. *See Best Van Lines, Inc.*, 490 F.3d at 253 (defendant's defamatory comments on his website were directed to a nationwide audience and not specifically to New York residents). Thus, website interactivity cannot support the exercise of personal jurisdiction absent allegations or evidence that the defendant purposefully directed activities at the forum state.[1] In this case, SBM has failed to allege or establish that Defendants have expressly targeted their Internet activities at New York residents.

Moreover, to establish personal jurisdiction, SBM's claims must arise from the Defendants' contacts with New York to establish specific jurisdiction. "[A] claim 'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted

---

[1]    *See also Rescuecom Corp. v. Hyams*, 477 F. Supp. 2d 522, 530-531 (N.D.N.Y. 2006) (no personal jurisdiction in absence of "any allegation or showing that the website specifically targeted New York viewers"); *ISI Brands v. KCC Int'l*, 458 F. Supp. 2d 81, 87 (E.D.N.Y. 2006) ("Courts are reluctant to find personal jurisdiction unless the website specifically targets New Yorkers, or is aimed at New York users"); *Knight-McConnell v. Cummins*, No. 03 Civ. 5035 (NRB), 2005 U.S. Dist. LEXIS 11577, at *9-11 (S.D.N.Y. June 10, 2005) (no transaction of business in New York based on online postings of statements about New York resident on out-of-state website); *Seldon v. Direct Response Techs.*, No. 03 Civ. 5381, 2004 U.S. Dist. LEXIS 5344, at *17-19 (S.D.N.Y. Mar. 31, 2004) (finding no transaction of business in New York based on out-of-state website with interactive message boards available to New York users).

and the cause of action sued upon,' or when 'there is a substantial relationship between the transaction and the claim asserted.'" *Best Van Lines, Inc.*, 490 F.3d at 246. SBM does not allege any claim based upon New York residents' interaction with Defendants' websites, but rather from Victoria Partners' operation of a resort and casino in Nevada.

Accordingly, in the absence of purposeful availment, the fact that Defendants operate interactive websites accessible to anyone anywhere in the world, including New York residents, is insufficient to support specific jurisdiction under Section 302(a)(1).

### B. There is No Basis for Exercising Specific Personal Jurisdiction Under CPLR § 302(a)(3) Because SBM Has Not Suffered Injury in New York

SBM claims that it suffered injury in New York because its actual and potential customers may be confused when they interact with Defendants' websites. (*See* Pltf.'s Opp. at 9.) However, "[a]ctual injuries resulting from alleged infringement . . . must be manifest . . . to satisfy the New York injury requirement of Section 302(a)(3)." *Overseas Media, Inc. v. Skvortsov*, 407 F. Supp. 2d 563, 576 (S.D.N.Y. 2005). **The "foreseeability of consequences in New York is not synonymous with injury in New York, particularly where the plaintiff has not alleged that the defendants solicited any of its customers in New York or sold any infringing products in New York."** *See id*. at 576-577 (citing *Gap, Inc. v. Stone Int'l Trading, Inc.*, No. 93 Civ. 0638 (SWK), 1994 U.S. Dist. LEXIS 16999, at *25-26 (S.D.N.Y. 1994) (emphasis added)). Here, SBM does not allege that the Defendants have solicited any of SBM's customers in New York or that Defendants provide goods or services in New York. Accordingly, SBM has failed to establish that it has suffered an injury in New York. *See Keramchemie GMbH v. Keramchemie (Canada) Ltd.*, 771 F. Supp. 618, 621 (S.D.N.Y. 1991) (in trademark case where "plaintiff has not shown that it has lost any customers or business or has in any other way been injured in New York as a result of defendant's alleged tortious acts," plaintiff had failed to establish Section 302(a)(3) jurisdiction).

Moreover, trademark infringement causes injury in the state where the intellectual property is infringed or held. *See McGraw-Hill Cos. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d

252, 256 (S.D.N.Y. 2005). SBM claims ownership of rights in the MONTE CARLO mark. (*See* Amended Complaint ("Am. Compl.") ¶ 13.) SBM is a citizen and resident of the Principality of Monaco, not New York. (Am. Compl. ¶ 5.) SBM's *subsidiary*, Societe des Bains de Mer USA, Inc. ("SBM USA"), a Delaware corporation, allegedly occupies an office in New York, but does not own any of the trademark rights at issue in this case. (*See* Declaration of Jonathan W. Fountain in Support of Defendants' Motion to Dismiss, or, in the Alternative, to Transfer this Case to the District of Nevada ("Fountain Decl.") ¶ 7 & Ex. D.) Thus, any injury felt by the Plaintiff in this case – SBM – will be felt in Monaco, not in New York. Any alleged infringement occurred in Nevada, not New York.

"Because the lack of injury within the state disposes of this issue, it is unnecessary to consider the other elements of § 302(a)(3)." *See Keramchemie GMbH*, 771 F. Supp. at 621. Nevertheless, the other elements of Section 302(a)(3), subparts (i) and (ii), do not apply either.

Subpart (i) provides that a defendant who commits a tortious act outside New York that causes injury to a person within New York may be subject to personal jurisdiction if he "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered" in New York. *See* N.Y. C.P.L.R. § 302(a)(3)(i). SBM has failed to establish that Defendants do business, solicit business, engage in other persistent conduct, or derive substantial revenue from goods used or consumed or services rendered *within the State of New York*. The activities associated with Defendants' websites is insufficient to constitute "doing business" in New York. *See Richtone Design Group, L.L.C. v. Classical Pilates, Inc.*, No. 06 Civ. 0547 (NRB), 2006 U.S. Dist. LEXIS 64370, at *10-11 (S.D.N.Y. Aug. 21, 2006) ("[T]he fact that defendants' website is accessible to New York residents simply does not constitute the kind of conduct required under § 302(a)(3)(i)"); *Hearst Corp. v. Goldberger*, No. 96 Civ. 3620 (PKL) (AJP), 1997 U.S. Dist. LEXIS 2065, at *29-48 (S.D.N.Y. Feb. 26, 1997) (holding offers to engage in commercial activity made on out-of-state Internet website analogous to advertisements and do not constitute "transacting business" in New York). Moreover, the activities associated with Defendants'

websites do not constitute solicitation of business in New York. *See id.* at \*41-\*48 (holding offers to engage in commercial activity made on out-of-state Internet website do not constitute solicitation of business in New York); *Telebyte, Inc. v. Kendaco, Inc.*, 105 F. Supp. 2d 131, 136 (E.D.N.Y. 2000) ("[T]he mere existence of a web site accessible from New York is insufficient to establish 'solicitation' for purposes of personal jurisdiction") (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997)). SBM does not allege that Defendants' goods or services are used or consumed in the State of New York. To the contrary, Victoria Partners' goods are sold and its services are rendered only at its Monte Carlo Resort & Casino in Nevada. (*See* Declaration of Bryan L. Wright in Support of Defendants' Motion to Dismiss, or, in the Alternative, to Transfer this Case to the District of Nevada ("Wright Decl.") ¶ 8.)

Next, subpart (ii) requires a reasonable expectation that Defendants' acts would have consequences in New York and that Defendants derive substantial revenue from interstate commerce. *See* N.Y. C.P.L.R. § 302(a)(3)(ii). SBM claims that subpart (ii) is satisfied because Defendants operate websites that collect personal information from New Yorkers and list New York airports as departure points for trips to Las Vegas. (*See* Pltf.'s Opp. at 10-11.) This is insufficient to establish a reasonable expectation that Defendants' acts would have consequences in New York because these contacts are initiated by New Yorkers, not by Defendants, and because these acts do not constitute a purposeful attempt to serve the New York market. *See Perry v. Boston Capital Ventures*, No. 01-CV-6186 (CJS), 2001 U.S. Dist. LEXIS 18789, at \*17-21 (W.D.N.Y. Oct. 30, 2001). Similarly, the fact that Defendants' websites list New York airports (as well as airports from around the world) is similarly insufficient to establish a reasonable expectation that Defendants' acts would have consequences in New York. *See Bensusan Rest. Corp. v. King*, 937 F. Supp. 295, 299 (S.D.N.Y. 1996) ("The mere fact that a person can gain information on the allegedly infringing product is not the equivalent of . . . making an effort to target its product in New York"). Although SBM argues that Defendants knew of SBM's activities in New York, even if true, mere knowledge is insufficient to establish a reasonable expectation of consequences in New York. *See Bensusan Rest. Corp.*, 937 F. Supp.

at 300 (holding mere knowledge that plaintiff's business is in New York is "insufficient to satisfy the requirement that a defendant 'expects or should reasonably expect the act to have consequences in the state'").

Finally, even if the elements of Section 302(a)(3) were satisfied, personal jurisdiction would not exist because SBM has failed to establish that the Defendants have purposefully availed themselves of the privilege of conducting activities in New York.

### C.    The Exercise of Personal Jurisdiction Does Not Comport with Due Process.

Even if New York's Long Arm Statute is satisfied, due process counsels against the exercise of personal jurisdiction.  The Defendants do not have "minimum contacts" with the State of New York.  *See also Bensusan Rest. Corp.*, 937 F. Supp. at 301 ("Creating a [web]site . . . may be felt nationwide -- or even worldwide -- but, without more, it is not an act purposefully directed toward the forum state").  Furthermore, the exercise of personal jurisdiction would be unreasonable under the factors set forth in *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).  It would be unduly burdensome for the Defendants to litigate this action in New York where, as here, the Defendants and their counsel are located more than 2,000 miles away in Las Vegas, Nevada, and where most of the relevant witnesses, documents, and tangible things (*i.e.*, the Monte Carlo Resort & Casino itself) are located.  In contrast, New York has only a tenuous connection to this action as merely the location of SBM's subsidiary's office, not SBM.  Moreover, Defendants have identified thirteen witnesses located in Las Vegas, at least eight of whom are not parties.  (*See* Supplemental Declaration of Jonathan W. Fountain in Support of Defendants' Motion to Dismiss, or, in the Alternative, to Transfer this Case to the District of Nevada ("Supp. Fountain Decl." ¶¶ 5-11.)  On the other hand, SBM has identified one witness in New York and two witnesses in Monaco. (*See* Pltf.'s Opp. at 22-23.)

### D.    The Court Should Deny SBM's Request for Jurisdictional Discovery

Because SBM has failed to set forth a *prima facie* case for personal jurisdiction, the Court should not permit jurisdictional discovery.  *See Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185-186 (2d Cir. 1998).  Furthermore, "[j]urisdictional discovery is not permitted where . . .

6

the defendant submits an affidavit that provides all necessary facts and answers all questions regarding jurisdiction." *Ivoclar Vivadent, Inc. v. Ultident, Inc.*, 04-CV-0984E (Sc), 2005 U.S. Dist. LEXIS 20382, at *16-17 (W.D.N.Y. June 15, 2005).  Here, the Declaration of Bryan L. Wright denies that Defendants have transacted business or have had any other relevant contacts with New York.  Furthermore, SBM has failed to identify what relevant information jurisdictional discovery would allegedly yield.  If, however, the Court allows jurisdictional discovery, it should also allow Defendants to conduct discovery regarding SBM's alleged activities in New York, which SBM relies on in its Opposition.

## II.    THE COURT SHOULD DISMISS THIS CASE BASED ON LACHES

Contrary to SBM's argument, laches is properly raised in a motion to dismiss.  *See Solow Building Co. v. Nine West Group,* No. 00 CIV 7685, 2001 U.S. Dist. LEXIS 8848, at *10 (S.D.N.Y. 2001) (granting defendant's motion to dismiss based on laches); *Lennon v. Seaman,* 63 F. Supp. 2d 428, 439 (2d Cir. 1999) (laches can properly be raised on a motion to dismiss).

### A.    Defendants Did Not Engage in Inequitable Conduct

SBM argues that Defendants cannot assert laches because they have willfully and intentionally infringed SBM's claimed U.S. rights in the CASINO DE MONTE-CARLO mark. (*See* Pltf.'s Opp. at 14.)  Courts find inequitable conduct or bad faith when a defendant acts with "conscious fraud" to pass off its products or services as those of the plaintiff.  *See Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1042 (2d Cir. 1980).  SBM's allegation that Defendants knew of SBM's casino in Monaco is not enough to establish inequitable conduct because knowledge does not amount to "conscious fraud."

The fact that SBM operates a casino under the name Casino de Monte-Carlo in Monaco does not preclude Victoria Partners from using the MONTE CARLO mark for a casino in Las Vegas, Nevada.  Indeed, SBM does not own a U.S. trademark registration for the CASINO DE MONTE-CARLO mark for casino services.  SBM does not own or operate a casino using the CASINO DE MONTE-CARLO mark in the U.S.  Rather, SBM operates casinos thousands of miles away in a different country.  (*See* Am. Compl. ¶ 14.)  Thus, SBM's alleged U.S. rights in

the CASINO DE MONTE-CARLO mark do not turn upon SBM's use of the mark in Monaco. *See, e.g., Buti v. Impressa Perosa, S.R.L.*, 139 F.3d 98 (2d Cir. 1998) ("Impressa's registration and use of the Fashion Café name in Italy has not, given the territorial nature of trademark rights, secured it any rights in the name under the Lanham Act"). SBM fails to explain how Victoria Partners' adoption and use of the name of a foreign city for its casino in Las Vegas somehow constitutes "willful and intentional infringement" of SBM's non-existent U.S. trademark rights. Thus, SBM's allegations of willful and inequitable conduct do not rise to the level of "conscious fraud" required by the Second Circuit to overcome a laches defense.[2]

**B.    SBM's 11-Year Delay Is Not Excusable**

SBM tries to explain away its 11-year delay in filing suit based on several different factors. First, SBM blames its delay on "other litigation" and the principle that a "trademark owner is not bound to take on more than one infringer at a time." (*See* Pltf.'s Opp. at 16.) However, delay based on "other litigation" is excusable only when the plaintiff has given adequate notice to the defendant that it considers its use infringing and that it would take action as soon as it is done litigating the current action. *See, e.g., Tandy Corp. v. Malone & Hyde, Inc.*, 581 F. Supp. 1124, 1128 (M.D. Tenn. 1984), *rev'd on other grounds*, 769 F.2d 362 (6th Cir. 1985). Such notice prevents a defendant from being lulled into a false sense of security and permits defendant to file suit for a declaratory judgment. *See, e.g., Hotel Corp. v. Seaman Corp.*, 833 F.2d 1570, 1572-1573 (Fed. Cir. 1987), *overruled in part by A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (for other litigation to excuse a delay in

---

[2]   SBM cites several cases for its claim that inequitable conduct precludes reliance on a laches defense. (*See* Pltf.'s Opp. at 14-15.) However, all of these cases are distinguishable because they all involve situations where the defendants intended to cause confusion by trading off of the plaintiffs' goodwill. For example, in *Hermes International v. Lederer de Paris Fifth Avenue*, 219 F.3d 104, 107 (2d Cir. 2000), the defendant admitted that its products were knockoffs of plaintiff's products. In *Harley-Davidson, Incorporated v. Grottanelli*, 164 F.3d 806, 812 (2d Cir. 1998), the defendant admitted using a logo similar to plaintiff's proprietary logo to "purposefully suggest an association with Harley." In *Tri-Star Pictures Incorporated v. Unger*, 14 F. Supp. 2d 339, 344 (S.D.N.Y. 1998), defendants used a similar movie title to trade off of the fame of the original movie. In *Cuban Cigar Brands, N.V. v. Upmann International, Inc.*, 457 F. Supp. 1090, 1099-1100 (S.D.N.Y. 1978), "defendant had tried to move its name as close as possible to what it perceived to be the legal line."

bringing suit, there must be adequate notice to the alleged infringer of the other proceeding and the intention to proceed against the alleged infringer on completion of the proceeding"); *Jones v. Ceramco, Inc.*, 387 F. Supp. 940, 941-942 (E.D.N.Y. 1975) (plaintiff was barred by estoppel and laches for failing to give notice to an alleged infringer of plaintiff's patent, against whom no prior proceeding had been brought for eleven years).

Here, SBM failed to provide Defendants with any notice that it considered Defendants' use of MONTE CARLO objectionable, or that it intended to take action against Defendants following SBM's WIPO and district court actions against International Bancorp. A simple letter would have sufficed, but none was sent. In fact, SBM did not object to Victoria Partners' MONTE CARLO mark until February 15, 2005, when SBM opposed Victoria Partner's application to *register* the MONTE CARLO mark. This was *nine years* after SBM learned of Victoria Partners' opening of its resort in 1996. (*See* Pltf.'s Opp. at 17.) [3]

SBM's WIPO action against International Bancorp is also irrelevant because litigating a foreign action does not count as a valid reason for delay in initiating a domestic action (even between the same parties). *See Schick Mfg., Inc. v. Gillette Co.*, 372 F. Supp. 2d 273, 283-284 (D. Conn. 2005) (holding separate litigation over same allegedly false advertisement in Germany and Australia did not excuse delay in bringing U.S. action for injunctive relief). Moreover, there was no reason for SBM to await the outcome of the WIPO case because the administrative panel did not consider the protectability of "MONTE CARLO" apart from other terms. *See Societe des Bains de Mer et du Cercle des Etrangers a Monaco v. Int'l Bancorp Europe et al.*, WIPO Case No. D2000-1323 (Jan. 8, 2001) at 3. The district court action was limited to the same issues. *See Int'l Bancorp, LLC v. SBM*, 192 F. Supp. 2d 467 (E.D. Va. 2002). Thus, SBM's contention

---

[3]  SBM relies on cases where courts have found the excuse of other litigation to be persuasive. (*See* Pltf.'s Opp. at 17) (citing *Citybank, N.A. v. Citytrust*, 644 F. Supp. 1011, 1014 (E.D.N.Y. 1986); *Fitzpatrick v. Sony-BMG Music Entm't, Inc.*, No. 07 Civ. 2933 (SAS), 2008 U.S. Dist. LEXIS 1164, at *13 (S.D.N.Y., Jan. 8, 2008)). However, in each of these cases, the "other litigation" involved the same parties. Thus, these cases are inapplicable and distinguishable.

that it needed to await the results of its litigation with International Bancorp before taking action against the Defendants is meritless.

SBM also argues that its delay in filing suit against Defendants is justifiable because it was entitled to wait until it was sure its right to protection had clearly ripened. (*See* Pltf.'s Opp. at 19.) SBM relies on *ProFitness Physical Therapy Center v. Pro-Fit Orthopedic & Sports Physical Therapy*, 314 F.3d 62 (2d Cir. 2002), in which the court held that the plaintiff was justified in waiting until the defendant entered the plaintiff's geographic market. *Id.* at 68. This is not the case here. Victoria Partners started using the MONTE CARLO mark in 1996 in Las Vegas. There is no allegation that Victoria Partners has expanded into other geographic markets or other lines of goods or services that would create a conflict with SBM that did not exist before and, in fact, Victoria Partners has not done so. (*See* Wright Decl. ¶ 8.)

SBM's contention that it delayed taking action because Defendants progressively encroached on SBM's rights is also meritless. Progressive encroachment requires that "the defendant, after beginning its use of the mark, redirect[ ] its business so that it more squarely compete[s] with plaintiff and thereby increase[s] the likelihood of public confusion of the marks." *ProFitness*, 314 F.3d at 70. Unlike the *ProFitness* case, none of Defendants' alleged acts redirected their businesses to more squarely compete with SBM; in fact, none of Defendants' alleged acts involves an expansion or change in trademark use.[4] To the contrary, Victoria Partners continues to operate one resort and casino in Las Vegas and it has not changed its use of the MONTE CARLO mark so as to come closer to SBM's use or to increase the alleged likelihood of confusion. *See Solow*, 2001 U.S. Dist. LEXIS 8848, at *11 (rejecting plaintiff's progressive encroachment argument and granting motion to dismiss because plaintiff failed to allege that defendants' intervening acts "increased the likelihood of confusion").

---

[4]  SBM claims that Victoria Partners applied for a federal trademark registration for the MONTE CARLO mark for casino services, opposed SBM's application for registration of the mark MONTE-CARLO BAY HOTEL & RESORT, threatened further lawsuits against SBM for its use of marks encompassing the term MONTE CARLO (which is not true), and had a fire that allegedly tarnished the MONTE CARLO mark. (*See* Pltf.'s Opp. at 19.)  None of these acts involve expanding the use of the MONTE CARLO mark, whether geographically or otherwise.

C.    **Even If The Burden Shifting Statute Does Not Apply,
Defendants' Laches Defense Succeeds On The Merits**

Although SBM has the burden of proving that laches does not apply, the facts clearly show laches based on delay and prejudice. ***SBM has been aware of Victoria Partners' use of the MONTE CARLO mark since June 21, 1996, but SBM did not file suit until 2008 – 11 years later.*** (*See* Fountain Decl. ¶ 12 & Ex. K.)  The earliest possible date on which SBM put Victoria Partners on notice was when SBM opposed Victoria Partners' application to register the MONTE CARLO mark on February 15, 2005.  However, even then, SBM did not accuse Victoria Partners of infringement; rather, SBM was merely trying to prevent Victoria Partners from obtaining a trademark registration, which would have precluded SBM from using the MONTE-CARLO mark for casino services in the U.S., but which would not have affected Victoria Partners' use of the MONTE CARLO mark.  Nevertheless, if this "notice" counts, then SBM's delay is still nine (9) years.

Finally, Defendants have been prejudiced by SBM's delay.  Laches applies if plaintiff's long failure to exercise its legal rights has caused defendant to rely to its detriment by building up a valuable business around its trademark.  *See Haviland & Co. v. Johann Haviland China Corp.*, 269 F. Supp. 928 (S.D.N.Y. 1967) (finding prejudice where defendants had built up their business upon the faith of plaintiff's implicit assurance that it had no real grievance against defendants).  The trademark owner's delay "may lead the defendant to build up innocently an important reliance on the publicity of his mark so that its loss would cost dearly." *Chandon Champagne v. San Marino Wine Corp.*, 335 F.2d 531, 535 (2d Cir. 1964).  Prejudice can result from a defendant committing itself to an expensive advertising and marketing strategy: "By waiting over five years to assert its present claim, [plaintiff] precluded the possibility that [defendant] could effectively adopt an alternative marketing position." *Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187, 192 (2d Cir. 1996).  Here, Victoria Partners built a substantial reputation and relied on its marketing and advertising strategy during the 9 to 11 years that SBM slept on its rights.  Indeed, Victoria Partners spent more than $60 Million on advertising to build the Monte Carlo Resort & Casino's reputation and goodwill between opening in 1996 and 2005

(when SBM filed the opposition proceeding), while SBM idly slept on its alleged rights.  (*See generally*, Declaration of Shelane Daniels.)

## III.   THE COURT SHOULD DISMISS THE CLAIMS AGAINST MGM MIRAGE

In its Opposition, SBM has failed to identify any factual allegations in the Amended Complaint that state a claim against MGM MIRAGE individually. Just as SBM ignores the distinction between itself and its subsidiary, SBM USA, SBM also ignores the distinction between MGM MIRAGE and its subsidiary, Victoria Partners.  Indeed, nearly all of SBM's allegations in the Amended Complaint lump Victoria Partners and MGM MIRAGE together as "Defendants," without distinguishing between them.  Yet, it is obvious that SBM's allegations about the Defendants' Monte Carlo Resort & Casino, which is owned and operated by Victoria Partners, cannot possibly pertain to MGM MIRAGE.  For example, Paragraphs 36 and 37 of the Amended Complaint refer to statements by the "Defendants" to the United States Patent and Trademark Office, but the supporting Exhibits E and F clearly indicate that the statements were made only by Victoria Partners.  (*See* Am. Compl. ¶¶ 36-37.)  Furthermore, SBM makes allegations about the Defendants' selection of the MONTE CARLO mark, ignoring the fact that MGM MIRAGE did not become the indirect parent of Victoria Partners until almost ten (10) years after the name was selected.  (*See id.* ¶¶ 32-35.)  While SBM argues that the facts alleged in its complaint must be accepted as true, the Court need not accept SBM's vague and conclusory allegations as true.  *See, e.g., Burns v. Cook*, 458 F. Supp. 2d 29, 35 (N.D.N.Y 2006) ("only plaintiff's factual allegations, as opposed to conclusory allegations or legal conclusions, are taken as true").  Accordingly, the Court should dismiss the Amended Complaint for failure to state a claim against MGM MIRAGE.  *See, e.g., Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (lumping together of multiple defendants in one broad allegation fails to satisfy notice requirement of Rule 8(a)(2)).

## IV.   IF THE COURT DOES NOT DISMISS THIS CASE, IT SHOULD TRANSFER IT TO THE DISTRICT OF NEVADA

Although a plaintiff's choice of forum is generally given significant weight, the deference

is diminished where the plaintiff is a foreign entity and the operative events occurred outside of the forum. *See, e.g., Shin Won Corp. v. LaSalle Nat'l Bank*, No. 01 Civ. 3580 (RCC), 2002 U.S. Dist. LEXIS 4503 at *16 (S.D.N.Y. March 19, 2002). This Court should find that the District of Nevada is the most appropriate forum.

### A.    Convenience of the Witnesses

Traditionally, the most important factor in determining whether to grant a motion to transfer is the convenience of witnesses. *See Arrow Electronics Inc. v. Ducommun Inc.*, 724 F. Supp. 264, 265 (S.D.N.Y. 1989). This is especially so for non-party witnesses. *See Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005). In the opposition proceeding, in response to interrogatories asking Victoria Partners to identify witnesses on various topics, Victoria Partners identified thirteen (13) witnesses (*see* Fountain Decl. ¶ 15), at least eight (8) of whom are not employed by Defendants. (*See* Wright Decl. ¶ 9.) As set forth in the interrogatory responses attached to the accompanying Supplemental Declaration of Jonathan W. Fountain, several of these witnesses had direct involvement in or knowledge of Victoria Partners' selection and adoption of the MONTE CARLO mark. (*See* Supp. Fountain Decl. ¶¶ 5-11 & Ex. A.) In contrast, SBM identified only a single witness in New York; the other two are in Monaco. (*See* Declaration of Bernard Lambert ¶¶ 4-6.) Thus, Nevada is the most convenient forum for most non-party witnesses.

### B.    The Location of Documents and the Ease of Access to Sources of Proof

The parties agree that the location of relevant documents "is of little consequence." (*See* Pltf.'s Opp. at 23.) However, the parties disagree over whether a jury viewing of the Monte Carlo Resort & Casino is a factor the Court should consider when deciding whether to transfer this case. (*See id.* at 24.) A visit to Victoria Partners' property would enable the jurors to view the architectural design details that SBM claims are similar to its Casino de Monte-Carlo. A viewing is also relevant to SBM's allegations concerning the quality of Defendants' services. SBM contends that a personal visit by the jury to Victoria Partners' property without a similar trip to SBM's resort in Monaco would be "highly prejudicial" under Rule 403 of the Federal

Rules of Evidence. (*Id.*) However, Rule 403 only excludes evidence in which the "probative value is *substantially* outweighed by the danger of unfair prejudice." Fed. R. Evid. 403 (emphasis added). SBM does not explain how such a visit would be *substantially* outweighed by the danger of unfair prejudice. Moreover, the "subtle visual esthetic touches" SBM refers to in its Amended Complaint and the "quality" of Defendants' services would not be adequately captured through mere video or photographs. In contrast, these same aspects of *SBM*'s property, including the quality of SBM's services, are *not* relevant to any issue in this case. Thus, there is no need for the jury to view SBM's property.

  **C.**  **Convenience of the Parties**

  SBM argues that New York is a more convenient forum than Nevada, based on the presence of its subsidiary, SBM-USA, and its counsel in New York. (*See* Pltf.'s Opp. At 25.) In *Shin Won Corporation v. LaSalle National Bank*, the plaintiff, Shin Won, based its argument against transfer on the fact that its subsidiary was located in New York. 2002 U.S. Dist. LEXIS 4503, at *16. The court held that the presence of Shin Won's subsidiary was irrelevant because it "act[ed] only as Shin Won's marketing liaison with the New York fashion market," and that the presence of Shin Won's counsel in the forum was also irrelevant. *Id.* Similarly, the fact that SBM has counsel and a subsidiary conducting marketing activities in New York is also irrelevant in this case. Furthermore, SBM has substantial ties to Nevada. SBM is an owner of the Wynn Resorts, which owns and operates a hotel and casino on the Las Vegas Strip. (*See* Fountain Decl. ¶ 13 & Ex. M.) SBM has entered into a joint marketing agreement with Wynn Resorts, which "includes an exchange of management expertise and the development of cross-marketing initiatives between Wynn Resorts and SBM." (*See id.*) If SBM's personnel can travel to Las Vegas to exchange "management expertise" with Wynn Resorts, they can certainly travel to Las Vegas for their lawsuit.

  **D.**  **The Locus of Operative Facts**

  SBM contends that there is no "dominant center of gravity for a likelihood of confusion claim" and the fact that Defendants' resort is located in Nevada does not mean that Nevada is the

locus of operative facts. (*See* Pltf.'s Opp. at 26.)  Although SBM argues that there is no "single locus of operative facts," SBM contends that New York is the locus of operative facts because SBM's U.S. marketing activities occur there and because injury has occurred there. (*See* Pltf.'s Opp. at 27.)  However, it is SBM's subsidiary that has activities in New York, not SBM. Moreover, none of SBM's allegations arise from activity in New York.  The locus of operative facts is Nevada. Defendants are headquartered and conduct business in Nevada.  The Monte Carlo Resort & Casino – which is the target of SBM's lawsuit – is located in Nevada.  The alleged infringing conduct would have occurred in Nevada.

   **E.**  <u>Availability of Process</u>

   SBM claims that the unavailability of process over third-party witnesses does not compel transfer because their testimony can be videotaped.  (*See* Pltf.'s Opp. at 27.)  However, videotaping is not a preferred means of obtaining testimony and is a poor substitute for live testimony.  *See In re Eastern Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. 188, 194 (E.D.N.Y. 1994).  Moreover, the testimony of third party witnesses is critical in this case.  They have knowledge of the naming of Monte Carlo Resort & Casino and SBM's acquiescence in Victoria Partners' use of the MONTE CARLO mark.  (*See* Supp. Fountain Decl. ¶¶ 5-11.)

<u>CONCLUSION</u>

   The Court should dismiss this action or transfer it to the District of Nevada.

       By:  <u>/s Jonathan E. Moskin</u>
       Jonathan E. Moskin
       WHITE & CASE LLP
       1155 Avenue of the Americas
       New York, NY 10036
       (212) 819-8200

       -and-

       Michael J. McCue (admitted *pro hac vice*)
       Jonathan W. Fountain (admitted *pro hac vice*)
       LEWIS AND ROCA LLP
       3993 Howard Hughes Pkwy., Suite 600
       Las Vegas, NV 89169
       (702) 949-8200

15

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of July, 2008, I served a copy of this **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO TRANSFER THIS CASE TO THE DISTRICT OF NEVAD**A on the attorneys for the Plaintiff, as designated below, by ECF Filing as follows:

Robert L. Raskopf
Claudia T. Bogdanos
Jonathan Scharf
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010

/s E. Michelle Dean
E. Michelle Dean
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036