```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SOCIETE DES BAINS DE MER ET DU           :
CERCLE DES ETRANGERS A                   :
MONACO,                                  :
                                         :
                    Plaintiff,           :   08cv03157(HB)
                                         :   OPINION & ORDER
              -against-                  :
                                         :
MGM  MIRAGE AND VICTORIA                 :
PARTNERS, L.P.                           :
                                         :
                    Defendants.          :
------------------------------------------------------------x
```

**Hon. HAROLD BAER, JR., District Judge:[1]**

Plaintiff, Société des Bains de Mer et du Cercle des Etrangers à Monaco ("SBM"), the owner of the Casino de Monte-Carlo in Monaco, has brought suit against defendants Victoria Partners, the owner of the Monte Carlo Resort & Casino in Las Vegas, and their parent company MGM MIRAGE, for infringement of Plaintiff's alleged U.S. trademark rights in the Casino de Monte-Carlo mark.  Defendants move to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted, and in the alternative move to transfer the case to the District of Nevada.  For the following reasons the Defendants' motion is denied.

### I. FACTUAL BACKGROUND

SBM is a foreign business entity organized under the laws of Monaco with its principal place of business in Monaco. Am. Compl. ¶ 5.  SBM holds a monopoly granted by the Principaute de Monaco over all casino gambling in Monaco.[2]  Id. at ¶ 13.  SBM owns five high-end casinos in Monaco, as well as luxury hotels, spas, restaurants, and entertainment venues there.  Id. at ¶ 14.  The Casino de Monte-Carlo is arguably the best known of all of these attractions and has been in operation since 1863. Id. at ¶ 1.

SBM utilizes the mark MONTE CARLO to identify its casino-related goods and services in its advertisements.  Id. at ¶ 19.  For over twenty years SBM's wholly-owned subsidiary, Société des bains de Mer U.S.A., Inc. ("SBM USA"), has maintained its sole office in New York

---

[1] I would like to thank my intern Jonathan Jacobson for his research assistance in connection with this decision.
[2] "The Principauté de Monaco ("Monaco") is a constitutional monarchy located on a small piece of land, smaller than the area of Central Park in New York City."  Am. Compl. ¶ 4.

1

where it promotes SBM's hotels and casinos to prospective American visitors. Id. at ¶ 20. To this end, SBM USA attends trade shows, arranges for advertising, participates in charitable activities, conducts direct mail and telephone marketing, and publishes "Societé," a Monaco tourism magazine that makes frequent reference to the Casino de Monte-Carlo. According to Plaintiff, in the year 2000 twenty-two percent of SBM's customers visited from North America and Americans constituted the largest SBM customer group. Id. at ¶¶ 20, 27. Further, SBM owns several internet domain names that incorporate the Casino de Monte-Carlo trademark and promote the Casino de Monte-Carlo. Id. at ¶ 21. SBM claims that because its name is world-renowned and it conducts substantial business in the U.S., it "will be irreparably harmed if it loses control over the ability to prevent unauthorized users from using the mark for casino-related products or services." Id. at ¶ 30.

Defendant MGM MIRAGE is incorporated in Delaware, and has its principal place of business in Las Vegas, Nevada. Decl. of Bryan L. Wright (May 19, 2008) ("Wright Decl.") ¶ 3. Defendant Victoria Partners, a subsidiary of MGM MIRAGE, is a Nevada Partnership and owns the Monte Carlo Resort & Casino in Las Vegas. Id. at ¶ 4. Victoria Partners opened the Monte Carlo Resort & Casino on the Las Vegas strip on June 21, 1996. Id. at ¶ 5.

Both Victoria Partners and MGM MIRAGE maintain interactive websites that promote and elicit sales for the Monte Carlo Resort & Casino. Defs.' Reply Mem. at 1. Through these websites consumers may book full vacation packages, including air travel, to stay at the Monte Carlo Resort & Casino. Id. On the websites customers may select trip details and input personal and payment information to complete a transaction. Decl. of Nicole Patterson (July 2, 2008) ("Patterson Decl.") ¶ 17. Specifically, through the use of drop down menus customers are able to select from a finite list of departure airports that include LaGuardia, Kennedy and Newark airports. Id. at ¶ 17. Defendants do not dispute that they have sold vacation packages to New York residents through the use of these websites. Hrg. Tr. 7: 7-10.

Defendants' websites also allow consumers to enroll in Defendants' "players club" to earn rewards by gambling at the Monte Carlo Resort & Casino, and in the course of such enrollment Defendants interact with prospective club members via telephone and email. Patterson Decl. ¶¶ 31-44, 79, 80. Further, Defendants' websites permit consumers to purchase casino credit by completing an online application and to create a "Monte Carlo Guest Book"

2

account through which they will receive information about promotions, room rates, contests, and special events.  Id. at ¶¶ 21-30, 53-56.

Plaintiff alleges that Defendants chose to name their Las Vegas resort and casino "Monte Carlo" to suggest a false association with Plaintiff's Casino de Monte-Carlo in Monaco.  Am. Compl. ¶ 32.  Plaintiff further alleges that Defendants' attempts to suggest an affiliation between the two casinos are evident from, *inter alia*, the design and decoration of the Las Vegas casino, promotional slogans found on Defendants' websites, and statements made by Defendants to the United States Patent and Trademark Office ("USPTO").  Id. at ¶¶ 33, 35, 36.

Based on these allegations the Plaintiff makes six claims:  (1) Defendants have engaged in federal unfair competition in violation of § 43(a) of the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1125(a); (2) Defendants have infringed on the Casino de Monte Carlo mark in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (3) Defendants have diluted Plaintiff's mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (4) Defendants have engaged in cybersquatting under the Anticybersquatting Consumer Protection Act, 15 U.S.C. §1125(d)(1);  (5) Defendants have committed injury to business reputation and trademark dilution in violation of § 360-*l* of the New York General Business Law; and (6) Defendants have committed common law trademark infringement and unfair competition in violation of the common laws of the State of New York and of the several states of the United States.

## II.  STANDARDS OF REVIEW

### A. 12(b)(2)

"The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss."  Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001).  But the plaintiff need only make a *prima facie* showing of jurisdiction when no evidentiary hearing has been held.  Hsin Ten Enter. USA, Inc. v. Clark Enters., 138 F. Supp. 2d 449, 451 (S.D.N.Y. 2000).  The Court should view the complaint and affidavits in the light most favorable to the plaintiff, and resolve all doubts in plaintiff's favor. Mattel v. Adventure Apparel, 00CV4085, 2001 WL 286728, *2 (S.D.N.Y. Mar. 22, 2001).

### B. 12(b)(6)

Under Rule 12(b)(6), a complaint will be dismissed if there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007); see also ATSI Communications, Inc. v. Shaar Fund Ltd., 493 F.3d 87 (2d Cir. 2007). The Court must read the complaint generously, accepting the truth of and drawing all reasonable inferences from well-pleaded factual allegations. See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007); York v. Ass'n of Bar of City of New York, 286 F.3d 122, 125 (2d Cir. 2002).

## III.   DISCUSSION

### A. Personal Jurisdiction

Plaintiff argues that Defendants are subject to personal jurisdiction in this Court pursuant to two provisions of New York's "long-arm" statute: N.Y. CPLR §§302(a)(1) and (3). Pl.'s Opp'n. Mem. 6-7. As it must, Plaintiff further contends that exercise of personal jurisdiction over Defendants comports with Constitutional requirements of due process. Id. at 12.

#### 1. N.Y. CPLR Section 302(a)(1)

To determine whether jurisdiction is proper under §302(a)(1), "a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether th[e] cause of action 'aris[es] from' such a business transaction." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007). An out-of-state defendant "transacts business" under Section 302(a)(1) when "he purposefully avails [himself] of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986); see also Best Van Lines 490 F.3d at 247. A claim "arises from" a particular transaction or series of transactions when there is an "articulable nexus" or a "substantial relationship" between the transactions that took place in New York and the causes of action asserted. Best Van Lines, 490 F. 3d at 246 (citing Henderson v. INS, 157 F.3d 106, 123 (2d Cir. 1998).

Here, Plaintiff alleges that Defendants "transact business" in New York through their websites. The courts of this circuit have identified a "spectrum of cases" where a defendant's internet activity forms the basis of alleged long-arm jurisdiction under §302(a)(1). Citigroup Inc. v. City Holding Co., 97 F.Supp.2d 549, 565 (S.D.N.Y., 2000). At one end of the spectrum are

"cases where the defendant makes information available on what is essentially a 'passive' website" and personal jurisdiction is lacking, and at the other end are cases where the defendant clearly "does business over the internet" with New York customers and jurisdiction is proper. Id. In the middle are "cases in which the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction." Id.

This Court recently held that it had personal jurisdiction over an out-of-state website selling NYPD paraphernalia when there was substantial evidence of actual sales and revenue in New York. Rubin v. City of New York, 06CV6524 (HB), 2007 U.S. Dist. LEXIS 23003 (S.D.N.Y. Mar. 29, 2007). Although the Court must "look to the 'totality of the circumstances' to determine whether [the §302(a)(1)] standard is met, even a single New York business transaction may be sufficient, provided the cause of action arises 'out of the subject matter of the [transaction].'" Warner Bros. Entertainment Inc. v. Ideal World Direct, 516 F.Supp.2d 261, 266 (S.D.N.Y.,2007) (quoting Viacom Int'l, Inc. v. Melvin Simon Prods., 774 F.Supp. 858, 862 (S.D.N.Y.1991)); see also Philip Morris USA, Inc. v. Veles Ltd., No. 06 CV 2988, 2007 WL 725412 at *4 (S.D.N.Y. Mar. 12, 2007) ("A single transaction may suffice for personal jurisdiction under Section 302(a)(1) and physical presence by the defendant in the forum state during the activity is not necessary" (citation omitted)).[3]

Relying primarily on Best Van Lines, Defendants argue that a website owner must "expressly target" New York residents to be subject to personal jurisdiction under New York's long-arm statute. Hrg. Tr. 5: 17-21; 7: 10-19. However, Best Van Lines concerned allegedly defamatory comments posted by an out-of-state defendant on an essentially "passive" website. Best Van Lines, 490 F.3d at 250. There, the Second Circuit recognized that "New York courts construe 'transacts any business within the state' more narrowly in defamation cases than they do in the context of other sorts of litigation." Id. at 248.[4] Opinions of the courts in this circuit are

---

[3] Although some courts have found jurisdiction lacking where a single sale to a plaintiff or his agent is used to "manufacture" jurisdiction, see, e.g. Elbex Video Kabushiki Kaisha v. Taiwan Regular Elec. Co., 93CV6160, 1995 WL 224774 *2-3 (S.D.N.Y. Apr. 14, 1995); ISI Brands, Inc. v. KCC Int'l, Inc., 458 F. Supp. 2d 81 (E.D.N.Y. 2006), here the sale to Plaintiff's agent Ms. Patterson documented in her declaration was one example of many internet sales to New York residents admitted to by Defendants. Moreover, other courts have allowed a transaction by a plaintiff or its agent to form the basis for jurisdiction. See, Mattel v. Adventure Apparel, No. 00 Civ. 4085, 2001 WL 286728, *3 (S.D.N.Y. Mar. 22, 2001).

[4] The requirement that a plaintiff allege a heightened showing of "express targeting" in the context of passive, noncommercial websites that post written content for any internet user to read implicates important free speech protections that are less acute where the internet activity at issue concerns repeated commercial transactions. See

varied on the question of whether "operation of an 'interactive' commercial website by itself can be sufficient to support personal jurisdiction." Chloe, Div. of Richemont North America, Inc. v. Queen Bee of Beverly Hills, LLC  571 F.Supp.2d 518, 527 (S.D.N.Y. 2008)  ("The jurisdictional treatment of interactive websites by the district courts in this circuit is not easily synthesized."). However, no case binding on this Court requires a separate and distinct finding of "express targeting" of New York residents outside the context of allegedly defamatory content posted on a "passive" website.  The relevant inquiry is whether, through the internet, the Defendants "transact business" in this forum.

Under the totality of the circumstances concept applicable here, and taking Plaintiff's allegations as true as I must at this stage, I find that through their websites Defendants "transact business" in New York under §302(a)(1).  Defendants do not dispute that they operate interactive websites through which they have sold hotel rooms and vacation packages to New York residents.  Hrg. Tr. 7: 7-10.  Further, Ms. Patterson, a representative of Plaintiff who resides in New York, used Defendants' website www.montecarlo.com to book a flight from Kennedy Airport to Las Vegas and a hotel stay at Defendant's Monte Carlo Resort & Casino.  Patterson Decl. ¶¶ 12-20.  Ms. Patterson also entered her personal information on Defendants' websites to receive special offers and open a "players club" account, and she received confirmation emails and spoke with hotel representatives on a phone number provided on the website.  Id. at. ¶¶ 31-44.  Moreover, Defendants' websites serve New York consumers by including LaGuardia, Kennedy, and Newark airports in a drop-down menu with a finite list of potential departure cities. Id. at. ¶¶ 31-44.  Defendants' internet activity is "significant and unqualifiedly commercial in nature" and consequently Defendants "transact[] business" in New York within the meaning of §302(a)(1). Citigroup, 97 F.Supp. 2d at 565.

Plaintiff's claims "arise from" Defendants' transaction of business in New York because there is an "articulable nexus" between Defendants' online sales through interactive websites and Plaintiff's claims of trademark infringement and dilution.  Best Van Lines, 490 F. 3d at 246 (citing Henderson v. INS, 157 F.3d 106, 123 (2d Cir. 1998).  Namely, the injuries alleged by

---

e.g., Best Van Lines, 490 F.3d at 245 (citing Legros v. Irving, 327 N.Y.S.2d 371, 373 (1971) and noting that defamation was excepted from the torts that may form the basis of long-arm jurisdiction under CPLR Section 302(a)(3) to "avoid unnecessary inhibitions on freedom of speech or the press.")

Plaintiff include Defendants' use of the Monte Carlo mark on their websites[5] and statements posted on the websites that Plaintiff contends improperly suggest an affiliation between Defendant's Las Vegas casino and Plaintiff's Casino de Monte-Carlo.  Accepting Plaintiff's allegations as true, it is clear that a consumer need not visit Las Vegas to be confused or deceived. See Citigroup, 97 F.Supp. 2d at 568 (finding that trademark plaintiffs were injured when actual or potential customers in New York were confused or deceived by interacting with defendants' websites).  Thus, Defendants are subject to personal jurisdiction in this Court under New York's long-arm statute, N.Y. CPLR §302(a)(1).

### 2. Due Process

In order to satisfy the Due Process Clause of the United States Constitution, the exercise of jurisdiction by this Court pursuant to New York's long arm statute must be based on Defendants' "minimum contacts" with the state and must comport with "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). "Where the claim arises out of, or relates to the defendant's contacts with the forum, minimum contacts exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." Bank Brussels Lambert v. Fiddler Gonzalez, 305 F.3d 120, 127 (2d Cir. 2002) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-76 (1985)).  As discussed above, Defendants transact business with New York residents through the internet, purposefully availing themselves of the privileges of this forum.  As a result of Defendant's ongoing commercial activity with New York residents, it does not offend "traditional notions of fair play and substantial justice to force them to defend against Plaintiff's claims in this district. Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction is denied.

### B. 12(b)(6) Dismissal of MGM MIRAGE and Laches

Defendants also move to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6) based on the doctrine of laches, and the contention that Plaintiff has failed to allege direct unilateral action by Defendant MGM MIRAGE.

---

[5] Indeed, Plaintiff's cybersquatting claim under 15 U.S.C. §1125(d)(1) is entirely premised on Defendant's "registration, maintenance, and use of [internet] domain names" similar to Plaintiff's Casino de Monte-Carlo mark through which Defendants transact business with New Yorkers.

### 1. 12(b)(6) Dismissal of MGM MIRAGE

Defendants insist that the Plaintiff failed to allege in its Amended Complaint that MGM Mirage has directly infringed SBM's trademark rights. However, the Amended Complaint cites both Defendants as direct actors and alleges that MGM Mirage maintains a website that contains statements allegedly calculated to suggest a connection between the Las Vegas resort and Plaintiff's casino. Am. Compl. ¶ 34. The Amended Complaint thus sufficiently alleges that MGM Mirage has directly infringed SBM's trademark rights. Reading the complaint generously and accepting the truth of and drawing all reasonable inferences from well-pleaded factual allegations as I must, Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007), Defendant's motion to dismiss the Amended Complaint for failure to state a claim against MGM Mirage is denied.

### 2. Laches

To prevail on a defense of laches in the trademark context, a defendant must establish that (1) the plaintiff had knowledge of the defendant's use of its marks; (2) the plaintiff inexcusably delayed taking action against the defendant; and (3) the defendant will be prejudiced by permitting plaintiffs to assert its rights now. Fourth Toro Family Ltd. Partnership v. PV Bakery, Inc., 88 F.Supp.2d 188, 196 (S.D.N.Y. 2000). "The defense of laches is an affirmative defense, which is generally not appropriately raised in a motion to dismiss." Lennon v. Seaman, 63 F. Supp. 2d 428, 439 (S.D.N.Y. 1999). A court may consider the defense of laches on a motion to dismiss "[w]hen the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar." Id. The Lanham Act establishes no statutory time bar, and as a result the Second Circuit applies New York's six-year fraud statute of limitations to Lanham Act claims to determine which party bears the burden of proof with respect to the laches defense. Conopco, Inc. v. Campbell Soup Co. 95 F.3d 187, 191 (2d Cir. 1996).[6]

Here, Defendants argue that Plaintiff has inexcusably waited to commence this action long after the expiration of the applicable statute of limitations period had run because while Plaintiff gained knowledge of Defendants' use of the MONTE CARLO trademark at or about the time it opened its hotel and casino in June 1996, this action was filed in 2008. Def.'s Mem. at 16-17. However, I find that dismissal based on laches at this stage of the litigation would not be

---

[6] When suit is brought within the applicable limitations period, the defendant bears the burden of proving that the doctrine of laches applies, but after the statutory time period has elapsed the burden shifts to the plaintiff. Conopco. 95 F.3d at 191 (citing Leonick v. Jones & Laughlin Steel Corp., 258 F.2d 48, 50 (2d Cir.1958)).

proper because even if the instant action was filed after the applicable limitations period, Plaintiff's Amended Complaint alleges intentional infringement, a set of facts that, if true, would avoid application of the laches defense altogether. Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir. 2000).[7]

"Intentional infringement is a dispositive, threshold inquiry that bars further consideration of the laches defense, not a mere factor to be weighed in balancing the equities." Id. In the Amended Complaint, Plaintiff sets forth details concerning Defendants' alleged willful infringement, "including Defendants' representations to the United States Patent and Trademark Office that it selected the name "Monte Carlo" to "invoke the image, in the minds of its consumers, of the real Casino de Monte Carlo." Pl.'s Opp'n. Mem. 15-16. (citing Am. Compl. ¶¶ 31-37.) Plaintiffs clearly allege that Defendants' trademark infringement and dilution was willful and intentional, and if these allegations are true the defense of laches would be unavailable to Defendants. In light of the foregoing, I decline to invoke the equitable doctrine of laches at this stage of the litigation.

## C. Venue under 28 U.S.C. §§ 1391(b) and (c)

Section 1391(b)(1) of the U.S. Code provides in relevant part that in an action based on federal question jurisdiction, a plaintiff may bring suit in "a judicial district where any of the defendants reside, if all defendants reside in the same state." 28 U.S.C. § 1391 (b)(1). Under Section 1391(c) "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." I have already determined that the Defendants are subject to personal jurisdiction in this district. Therefore, the Plaintiff's choice of venue was proper, and Defendants' motion to dismiss for improper venue is denied.

## D. Transfer to the District of Nevada

"A court may transfer an action to any other district where the case might have been brought if the transfer serves 'the convenience of the parties and witnesses, [and is] in the interest of justice.'" Capitol Records Inc. v. MP3Tunes, LLC, 07CV9931, 2008 WL 4450259, *5 (September 29, 2008) (quoting 28 U.S.C. § 1404(a)). As the moving party, Defendants bear

---

[7] Because the Amended Complaint specifically alleges a set of facts that, if true, will render the defense laches unavailable, I need not address here Plaintiff's contention that the six-year statute of limitations period was tolled by its prior actions—against Defendants and others—to establish and defend its rights to the Casino de Monte-Carlo mark.

the burden to prove that a transfer is "clearly" appropriate. Time Products v. J. Tiras Handbags, 93CV7856, 1994 WL 363930, at *10 (SDNY 1994). The decision as to whether transfer is proper is left to the sound discretion of the trial court. Id. (citing Filmline Productions v. United Artists, 865 F.2d 513, 520 (2d Cir. 1989)). Since Nevada would have jurisdiction over Defendants, it is permissible to weigh the factors that are used by the federal courts to guide a transfer decision under Section 1404. Id.

Those factors are as follows: (1) the convenience of the witnesses; (2) the location of documents and the relative ease of access to proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiffs choice of forum; and (9) trial efficiency and the interests of justice. Capitol Records, 2008 WL 4450259, *5.

Because a number of these factors are neutral I will only discuss here those that weigh in favor of or against transfer of this case to the District of Nevada. A plaintiff's choice of forum is given great deference; however, when a foreign plaintiff chooses a U.S. forum, their bona fide connection to the forum will be proportional to the deference given to their choice. Gross v. BBC, 386 F.3d 224, 230 (2d Cir. 2004); but see Time Products, 1994 WL 36390, at *6 (finding British plaintiff with New York subsidiary could maintain action in New York though Defendants were in Texas). "The convenience of the parties factor does not weigh in favor of transfer where such transfer would merely shift the inconvenience of litigating in a particular forum from one party to the other." DealTime.com Ltd. v. McNulty, 123 F. Supp. 2d 750, 756. "However, where neither party resides in the chosen forum, it is only logical that a transfer to the residence of one of them would be more convenient." Id.

Defendants argue that convenience of the witnesses and the ability to compel testimony of non-party witnesses compels transfer because they intend to call a number of non-party witnesses who live in the Las Vegas area. But Defendants have failed to specify which persons will be key witnesses and what the nature of their testimony will be. See Orb Factory v. Design Science Toys, 6 F. Supp. 2d 203, 208-09 (S.D.N.Y. 1998). Further, "the unavailability of process over third-party witnesses does not compel transfer when the practical alternative of offering videotaped or deposition testimony of a given witness exists." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549 (S.D.N.Y. 2000). Videotaping or deposition testimony is an

option in this case, and therefore, not a factor that weighs towards transfer. Defendants have also argued that they would like a jury to visit the Monte Carlo Resort & Casino, however, this trip could be extremely prejudicial, and therefore, barred by Fed. R. Evid. 403; pictures and video would be suitable alternatives.

Although many of the operative facts of this case will pertain to events that took place in Las Vegas, there is no "dominant center of gravity" for a likelihood of confusion claim. Citigroup Inc., 97 F. Supp. 2d at 561. While defending in the District of Nevada would clearly be more convenient for the Defendants, SBM's U.S. operations are based in New York and this forum is much closer to Monaco than is Las Vegas. Both parties are corporations and both have the means to pursue litigation in this district. A transfer of forum would not affect the interests in trial efficiency, or the forum's knowledge of governing law. The factors discussed above do not weigh heavily in favor of transfer, and the balance of the factors that guide this Court's discretion are neutral. Accordingly, the Defendants' motion to transfer this case to the District of Nevada is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss these claims, or in the alternative, to transfer to the District of Nevada is DENIED.

**SO ORDERED**
New York, New York
November 24 2008

_____
U.S.D.J.

11